## FREDA LANGE, by Next Friend, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, December 24, 1907.

1. **NEGLIGENCE: Prima-Facie Case.** Where the evidence makes out a prima-facie case, it is the duty of the court to submit the case to the jury.

2. ——: ——: **Escaping Steam: To Frighten Children.** Where the evidence shows that the engineer permitted steam to escape from his engine for the purpose of scaring children standing on a cinder platform near by, thereby scattering steam and cinders over them and causing them to move backwards, and plaintiff, a child, less than ten years old, in backing away, stepped upon a side track, and was struck by a loose freight car moving thereon, which she did not hear or look to see, a prima-facie case is made out for her.

3. ——: **Instruction: In Harmony With Appellant's.** A party cannot complain of an instruction which is in harmony with one given at his own request. Appellant cannot complain that plaintiff's instruction authorized the jury to find for her if they believed that the injury was caused by a defective brake, while the evidence discloses no evidence upon which to base the instruction, if by its own instructions asked and given the same issue is submitted to the jury.

4. ——: **Departure: Wantonness in Petition: None in Instruction.** Where there are extravagant statements in the petition, which defendant claims amount to a charge of wantonness, recklessness, etc., yet if the petition in terms also charges negligence, an instruction for plaintiff which bases her right to recover on negligence alone is no departure from the petition.

5. ——: ——: **Cured by Defendant's Instruction.** An omission of the element of wantonness, charged in the petition, from plaintiff's instruction, is cured by instructions given for defendant in which is clearly set forth the element of wantonness.

6. ——: **Trespasser: Wantonness.** Where plaintiff, a school girl less than ten years old, went to the station to see her teacher depart on a passenger train, and after the train left continued to stand on the cinder sidewalk, and, when the freight engine on the same (or main) track came down and began to emit steam, retreated backwards to the side track, as the engineer, in amusing himself, expected her to do, and, as a result, was there

Lange v. Mo. Pac. Ry. Co.

struck by a loose freight car, she was no trespasser; and, being seen by all the train crew, it is useless, under the circumstances, to consider whether she was injured by the wanton and reckless conduct of the brakeman on the freight car in not sooner stopping the car, or of the engineer in unnecessarily letting off the steam.

7. ———: Instruction: In Place of Danger. An instruction which tells the jury that if the brakeman "saw the plaintiff on said side track in front of said car in time to have stopped it," etc., contains words equivalent to "in a place of danger."

8. ———: Contributory: Omitted from Instruction. An instruction for plaintiff which ignores the question of contributory negligence is cured by one given for defendant which embraces that issue.

9. ———: ———: Instruction: Comment on Evidence. Instructions which tell the jury that if they find the facts therein stated as constituting defendant's negligence to be true, then they may take them into consideration in determining whether or not plaintiff was guilty of contributory negligence, are not comments on the evidence.

10. ———: ———: Embraced in One Instruction. It is better practice to submit in one instruction the facts pleaded which constitute plaintiff's contributory negligence, but there is no valid legal objection to submitting them in different instructions, especially where they do not tell the jury that the recited facts constitute contributory negligence, but that the jury should take them into consideration in passing upon that question.

11. ———: ———: Of Child. The jury should be told that in passing upon the contributory negligence of the injured child, they should take into consideration its age, intelligence, understanding, experience and surroundings. But it is not absolutely necessary that that be done in one instruction.

12. ———: ———: Frightening Child. Where one person negligently frightens another, and such other, while so frightened, is injured, the jury should consider that fact in passing upon the contributory negligence of the injured person.

13. ———: Measure of Damages to Child. An instruction which tells the jury that in estimating her damages, they should, among other things, "consider to what extent, if any, plaintiff's capacity for earning a livelihood, after her majority, will be impaired by said injuries, and return a verdict for her in such sum as you believe to be just and reasonable, not exceeding," etc., does not leave it to the jury to fix the amount of her damages as they may deem just and proper, and is not erroneous.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*Martin L. Clardy* and *Scott & Bowker* for appellant.

(1)   The court erred in refusing to sustain appellant's demurrer to the evidence.   Carrier v. Railroad, 175 Mo. 481; Zumault v. Railroad, 175 Mo. 311; Holwerson v. Railroad, 157 Mo. 261; Tanner v. Railroad, 161 Mo. 497; Coleman v. Land Company, 105 Mo. App. 271; Van Back v. Railroad, 171 Mo. 338; Spillane v. Railroad, 135 Mo. 414.   (2)   A child can be guilty of contributory negligence the same as an adult, regard being had to its age, etc., and where the act of the child is the sole cause of the injury, there can be no recovery. Spillane v. Railroad, 135 Mo. 414; Barney v. Railroad, 126 Mo. 372; Lee v. Jones, 181 Mo. 291.   (3) Where a party is a trespasser on the tracks of a railroad company, and is injured while thereon, the company is only liable to such injured party for wanton and reckless disregard of human life, and unless the proof shows such character of negligence, the company is not liable.   Carrier v. Railroad, 175 Mo. 481; Zumault v. Railroad, 175 Mo. 311; Van Back v. Railroad, 171 Mo. 339; Roenfeldt v. Railroad, 180 Mo. 554; Frank v. Railroad, 112 Mo. App. 496; Heiter v. Railroad, 53 Mo. App. 331; Moore v. Railroad, 176 Mo. 529.   (4)   Instruction 1, given for respondent, was erroneous, for the reason there was no testimony that the brake on the car was defective.   Donaham v. Joyce, 129 Mo. 5.   (5) Instruction 2, given for respondent, was erroneous, for the reason that it leaves out of view any element of wantonness or recklessness on the part of appellant, its agents or employees, and also because it did not require respondent to have been in a dangerous position, and unaware or oblivious of the

approaching of the car, nor did it require her to be in the exercise of any degree of care whatever.    (6) Instructions three, four, five and six, given for respondent, were erroneous, for the reason they were a comment upon the testimony, and give undue importance to certain facts.      Lynch v. Railroad, 112 Mo. 437; State v. Snyder, 182 Mo. 521; Bidbeutal v. Railroad, 43 Mo. App. 470.   (7)  Instruction 10, upon the measure of damages, was erroneous, for the reason that it allowed the jury to return such damages   as   they deemed just and reasonable.     Hawes v. Stock Yards, 103 Mo. 60.

*Alexander Graves* and *Charles Lyons* for respondent.

The facts of this case are precisely the same as the facts in the father's suit against this appellant. Lange v. Railroad, 115 Mo. App. 582.   (1)  Instruction 1 merely defined the issues and told the jury that plaintiff need not prove all the acts of negligence charged. If there was no evidence concerning defective brakes, then instead of submitting that question to the jury as appellant did by its instructions 3, 6 and 7, it should have asked the court to so direct the jury; and failing to do so, it can not now complain.     Thompson v. Bucholz, 107 Mo. App. 121; Coleman v. Drane, 116 Mo. 387.   (2)  Appellant's point 5 unjustly complains of resondent's instruction.     Donahoe v. Railroad, 83 Mo. 551.   The law presumes that plaintiff was injured by the negligence of defendant and that she exercised due care at the time.     Holding v. St. Joseph, 92 Mo. App. 149; Weller v. Railroad, 164 Mo. 180.     Besides, if there was any omission in that instruction, the omission was supplied by the appellant's precise and rigid instructions, 8, 6 and 4.     Owen v. Railroad, 95 Mo. 181.     In view of appellant's said instructions, any omission in the instruction for respondent is cured.

Anderson v. Railroad, 161 Mo. 427; Meadows v. Ins. Co., 129 Mo. 97; Hughes v. Railroad, 127 Mo. 452. (3) Appellant's point 6 is the same as its point 3 in its brief (in the former case) reported in 115 Mo. App. 584; and cites the same authorities, the first of which, Lynch v. Railroad, 112 Mo., decided by SHERWOOD, J., is overruled by this court In Banc in Schmitz v. Railroad, 119 Mo. 269, and Baker v. Railroad, 147 Mo. 168. See, also, Blackwell v. Hill, 76 Mo. App. 53. (4) Appellant in point 7 complains that respondent's instruction 10 allowed the jury to return such damages as they deemed reasonable and just. There is nothing in this complaint. This identical final sentence in a similar instruction, from which 10 is copied, was approved by Court in Banc in Schmitz v. Railroad, 119 Mo. 269. (5) The demurrer to the evidence was properly overruled. Lange v. Railroad, 115 Mo. App. 582; Donahoe v. Railroad, 83 Mo. 555; Reyburn v. Railroad, 187 Mo. 572; Baker v. Railroad, 147 Mo. 158; Stephens v. Railroad, 67 Mo. App. 362. (6) The judgment should be affirmed and our motion for ten per cent damages should be sustained.

WOODSON, J.—This suit was instituted in the circuit court of Lafayette county, seeking to recover $20,000 damages for personal injuries received by plaintiff, through the alleged negligence of the defendant by running one of its cars upon and over her right leg and so mangling it as to render amputation thereof necessary, just below the knee. There was a trial before the court and jury, which resulted in a verdict and judgment for the plaintiff for the sum of $5,000. After taking the proper preliminary steps, the defendant appealed the cause to this court.

There is no question presented here regarding the pleadings, and for that reason they will not be further noticed.

The evidence for plaintiff tended to show that plaintiff was a little German girl, nine years and nine months old at the time of her injury, and could not speak English.   The injury occurred at a station on defendant's road, called Emma; that at the station there are two tracks, the main and the switch track, and the latter was three or four hundred feet in length and was north of the main track, and at the point of the injury they were separated about forty feet; that these tracks ran east and west, and a public road, forty feet in width, crossed them at right-angles; that between the two tracks and just west of the public road, and lying along and parallel with the main track, was located a cinder platform, constructed for and used by the patrons of the road, but there was no station house; that this platform was about forty feet long by eight in width.   That the plaintiff was struck and injured on the switch track, about sixteen feet west of the public road; that she lived south of the railroad and was attending school on the north side; that school was dismissed about 4:30 p. m., and she was on her way home with twelve or fourteen other school children, all of whom went down to the platform to see their teacher off on a west-bound train, due about that time.   That while the children were on the platform an east-bound freight train headed in on the side track, awaiting the passage of the west-bound passenger train; that there was standing on the side track an empty freight car, which was to be placed in the freight train and taken on east; that the entire crew, with probably one exception, saw the children standing on the platform. That after the departure of the passenger train, the freight engine was disconnected from its train and coupled onto the empty car standing in front thereof, which it pushed up beyond the east end of the switch track and some distance beyond that point on to the main track, and then the engine was reversed and ran

back west on the main track, pulling the empty car, and while thus moving the engine was uncoupled from the car, and it was shunted back west on the side track to be coupled onto the freight train, and the engine passed faster on down the main line, and thereby performed what is called a "running switch." That because of the more rapid speed of the engine it reached the platform and stopped there some few seconds before the empty car reached a corresponding position on the switch track; that when the engine stopped at the platform the children were still standing thereon, and while thus standing the employees in charge of the engine caused to be discharged therefrom, three or four times, large volumes of steam, which made loud noises and blew dirt and cinders ten to twelve feet from the platform; that the steam struck the children and caused them, including the plaintiff, to go backward toward the side track upon which the empty car was approaching, as a result of the momentum given it by the flying switch; that while the children were thus moving backward, the fireman was looking at them and laughing; that as the discharge of the steam was repeated the children continued to retreat therefrom, backward, toward the side track, and plaintiff was looking all the time, with a sun bonnet on, at the engine and escaping steam until she reached and stepped upon the side track, where she was struck by the empty car and injured; that she never looked east or west, nor saw the approaching car which struck her; that the brakeman, who was on the west end of the car and in charge thereof, saw the plaintiff moving backward toward him, when the car was from sixty to seventy feet from her, and there was nothing to obstruct his view of her, but he made no attempt to stop it until he was within six or eight feet of her, and only then after someone hollowed to him that someone was in danger; that the car was running three or four miles

an hour and could have been stopped within three or four feet.

The plaintiff then rested her case, and defendant asked a demurrer to the evidence, which was, by the court, overruled, and defendant duly excepted.

The defendant then introduced evidence which tended to prove that no steam escaped from the engine while it was standing at the platform, nor until it started east, after making the switch, and that what then escaped was necessary in the ordinary operation of the engine; that no steam was emitted for the purpose of frightening the children; that plaintiff was familiar with the station, tracks and the operation of trains at that place; and that she was a girl of average intelligence, and crossed the tracks every day going to school.

The court then gave the following instructions, over the objections and exceptions of defendant, on behalf of the plaintiff, to-wit:

"1.   The court instructs the jury that plaintiff's petition charges her injuries and damages were caused by the following acts of negligence of defendant's agents operating conjointly or severally, namely, that said agents in charge of said engine unnecessarily and negligently, purposely and wantonly discharged at and about the plaintiff and her companions an excessively large volume of steam, thereby causing her to take fright and flee from said steam and unconsciously to stop upon the side track in front of a detached freight car moving upon a running switch by which she was struck and which ran over and crushed her leg.   Also that the defendant negligently used said freight car while equipped with a defective or insufficient brake, rendering it more difficult to be stopped.   And you are further instructed that the plaintiff need not prove all of said acts of negligence, but that if you find and

208 Sup—30

believe from the evidence that her said injury was directly caused by either one of said acts of negligence, then your verdict should be for the plaintiff.

"2. The court instructs the jury that if you believe from the evidence defendant's brakeman in charge of said car while the same was moving toward her saw the plaintiff on said switch track in front of said car in time to have stopped the same before striking the plaintiff, and that said brakeman paid no further attention to the situation in which she was placed until said car ran so close upon her that it was impossible to stop it in time to prevent the accident, and if you believe from the evidence that said car knocked plaintiff down and she was thereby injured, then the defendant is in law guilty of negligence and your verdict must be for plaintiff.

"3. You are further instructed that the plaintiff, Freda Lange, was bound to exercise only such care and prudence as might be reasonably expected of a girl of her age and capacity, under similar circumstances, and that the same degree of care and prudence in avoiding danger is not required from a person of tender years as from a person of mature years and greater discretion under similar circumstances; and if the jury believe from the evidence that the plaintiff was at the time of the accident of about nine years and nine months of age, you may take that fact into consideration in considering the question of negligence, if any, on part of the plaintiff.

"4. You are further instructed that although you may believe from the evidence that it would have been negligence in an adult to have stopped upon said side track in front of said detached freight car while the same was in motion, if you believe from the evidence plaintiff did so stop on said side track on the occasion of her injuries, still if the jury find that by reason of her youth and inexperience she was not aware of the

danger to which she was exposed in doing so, then the jury will take this into consideration in passing upon the question of plaintiff's alleged contributory negligence.

"5.    The court instructs the jury that if you believe from the evidence that the plaintiff, Freda Lange, was frightened by the discharge of steam from the defendant's engine on the main track in front of the cinder platform on which she was standing and that she was caused thereby to retreat backward to the side track and that her attention was on that account fixed upon said engine and so diverted as to cause her not to notice the empty freight car approaching her on said side track, you will take that fact into consideration in connection with her youth and inexperience in determining whether under all the facts and circumstances she was guilty of negligence causing her injuries.

"6.    If the jury believe from the evidence that the car which struck and injured Freda Lange was being run at the time of the injury on a running or flying switch and that such manner of handling said car was more dangerous to and more likely to injure persons who might be on the track or attempting to cross the track than the ordinary and usual manner of switching cars, as shown by the evidence, then the defendant's servants were bound to use more than ordinary care and caution in making such switch, and if you believe from the evidence that the injury to Freda Lange was the result of any want of care and caution on the part of the defendant's servants in making such running or flying switch you should find for the plaintiff.

"7.    The court instructs the jury that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and if you believe that any witness has  wilfully sworn  falsely

to any material fact in issue, you may disregard such false testimony and may disregard the whole of his or her testimony.

"8.   'Ordinary care and caution' as used in these instructions mean such care and caution as a reasonably prudent person would use in his own affairs and under the same and similar circumstances.   The word 'wantonly' as used in the petition   and   instructions means heedless inattention to duty.

"10.   The court instructs the jury that if you find for the plaintiff you will in assessing her damages take into consideration the physical condition she was in before her injuries in question, the physical pain and mental anguish she has suffered occasioned by said injury and the physical pain and mental anguish, if any, you believe from the evidence she is likely to suffer in the future because of said injury; and in addition to this you may also consider to what extent, if any, plaintiff's capacity for earning a livelihood, after her majority, will be impaired by said injuries and you will return a verdict for her in such sum as you believe to be just and reasonable, not exceeding the sum of $20,000.''

And the court gave the following instructions on behalf and at the request of the defendant, to-wit:

"1.   The court instructs the jury, that one of the alleged acts of negligence averred in plaintiff's petition as causing plaintiff's injury is that defendant's engineer, in charge of one of   defendant's   engines, standing on its main track at Emma Station, unnecessarily, negligently and for the purpose of frightening the plaintiff, opened a steam valve and discharged from said engine a large volume of hot steam therefrom or from the steam chest thereof against and about plaintiff, frightening her and causing her to step back upon the side track in front of a moving car by which she was run over and her leg crushed.   This allegation the

defendant has denied in its answer.   You are there-
fore instructed that it devolves upon the plaintiff to
prove this allegation of her petition to your satisfac-
tion, by a preponderance of the evidence.   And if the
jury find from the evidence that while said engine was
standing still upon the track no steam could possibly
be discharged from the steam chest of said engine, or
from any valve thereof, except the safety valve, and
that no steam was discharged or escaped from   said
valve or steam chest, then the plaintiff cannot recover
herein on that allegation of her petition, and as to said
alleged act of negligence, the jury will find for the de-
fendant.

"2.   And with further reference to said alleged
act of negligence and wantonness on the part of its
engineer, the court instructs you, that although you
may believe from the evidence that steam did escape
from any part of said engine, which alarmed or fright-
ened the plaintiff, yet if you further believe from the
evidence that said steam escaped or was thrown out
by the usual and ordinary operation of the engine, and
was not thrown out or permitted to escape by the en-
gineer in charge of said engine negligently or unneces-
sarily for the purpose of frightening the plaintiff, then
the plaintiff cannot recover herein on account of the
escape of such steam, and as to that matter the jury
will find for the defendant.

"3.   The court further instructs the jury that
another alleged act of negligence by  the  defendant
charged in plaintiff's petition as causing plaintiff's
injury is, that the car which run over plaintiff was
equipped with a defective and insufficient brake, where-
by said car was rendered less manageable and more dif-
ficult to be stopped.   This allegation of the plaintiff's
petition the defendant has also denied in its answer.
You are, therefore, instructed that it devolves upon
the plaintiff to prove this allegation to your satisfac-

tion by a preponderance of the evidence.   And if you believe from the evidence that the brakes on said car were in an ordinarily and unusually good and safe condition, and would stop and did stop said car as quickly as usual when running at the same rate of speed on a track of the same grade, then the jury will find for the defendant as to said allegation of negligence.

"4.   The court further instructs the jury that another alleged act of negligence by the defendant charged in plaintiff's petition as causing plaintiff's injury, is that the defendant's brakeman in charge of the car which run over plaintiff saw her, or by the exercise of ordinary care and caution could have seen her in front of said car in time to have stopped the same before striking and running over her.   With reference to this alleged act of negligence the court instructs you that if you find from the evidence that as said car was running west upon the side track toward the train to which it was to be attached it was in charge of a competent brakeman who stood at the brakes on the west end thereof, and that as the car approached the plaintiff she was standing by the side of the track on which the car was approaching and not in any danger of being struck thereby, and that when said car got close to her she stepped upon the track in front of said car and so close to it that the brakeman in charge of it could not stop it, and that he made all reasonable effort to stop it before it struck plaintiff and run over her but could not do so, then the plaintiff cannot recover on account of this alleged act of negligence, and the jury will find for the defendant on said charge.

"5.   The court further instructs the jury that if they find from the evidence that the plaintiff, Freda Lange, was not at the defendant's platform or station, at the time or just before she was injured, for the purpose of taking passage upon any of defendant's trains, but was there merely as a matter of pleasure, amuse-

ment or curiosity, or to see her school teacher take passage on one of the defendant's trains, then she did not occupy toward the defendant the relation of a passenger, and the defendant was only bound to exercise reasonable care not to injure her, after any of its agents or servants saw her in a position of danger.

"6. The court further instructs the jury that if you find from the evidence that the plaintiff, Freda Lange, was old enough to know that it was dangerous to go upon or stand upon a railroad track, and that a car running on such track might strike her or run over her, and if you further believe that the car which struck her was in her full view as it came toward her, and if she had looked she must have seen it, but that she approached the track on which she was afterwards hurt without looking to see if a car was coming toward her, and without so looking stepped upon the track immediately in front of such car and so close thereto that the brakeman in charge of said car could not stop it by the energetic and vigorous use of the brakes upon said car, and that such brakes were in ordinary good and efficient condition, then the plaintiff was guilty of such want of care for her own safety as bars her from recovering herein, and the jury will find for the defendant.

"7. The court further instructs the jury that the brakeman in charge of the car which struck plaintiff was not bound to anticipate that the plaintiff would step upon the track in front of his car, and was not bound to try to stop his car until he saw her in a position of danger, and if the jury find from the evidence that as the car approached the plaintiff the brakeman was at the brake on the west end of said car, looking ahead of him toward the west and did not see plaintiff until just as she stepped on the track, and that as soon as he saw her he did all in his power to stop the car before it struck her, but could not do so, and that

said car was equipped with brakes in ordinarily good and serviceable condition, then he did all the law required of him, and was guilty of no negligence, and the plaintiff cannot recover herein.

"8. The court further instructs the jury that the defendant did not owe it as a duty to the plaintiff under the allegations of plaintiff's petition and the evidence in this case to have the brakes on the car which struck her in the best possible and serviceable condition. The only duty which the defendant owed to her under the circumstances shown by the evidence was not to wilfully and wantonly run over her, but to use all reasonable efforts and care, by the use of all means at its command, to stop the car before striking her after the brakeman in charge of said car discovered the plaintiff upon the track in a position of peril or after he might have so discovered her by the exercise of ordinary care."

The defendant and appellant has assigned the following errors:

First. The court erred in refusing appellant's demurrer to respondent's evidence.

Second. That the court erred in giving instruction number one for respondent, for the reason that there was no evidence that the brake of the car was defective.

Third. That the court erred in giving instruction number two for respondent, for the reason that it leaves out of view any element of wantonness or recklessness on the part of the appellant, its agents or employees, and also because it did not require the respondent to have been in a dangerous position and unaware or oblivious of the approaching of the car, nor did it require her to be in the exercise of any degree of care whatever.

Fourth. That the court erred in giving instruc-

tions number three, four, five and six for respondent, because they are comments upon the evidence.

Fifth. That instruction number ten given for respondent was erroneous, because it allowed the jury to return such damages as they deemed just and reasonable.

I. The first insistence of the appellant is, that the action of the trial court in refusing to sustain its demurrer to respondent's evidence at the close of her case was erroneous.

The evidence tends to show that she was a school girl, not quite ten years of age, and of average intelligence; that on the day of her injury she and some twelve or fourteen of her schoolmates in returning to their homes from school stopped at the station of Emma to see their teacher off on a west-bound train, and that while they were standing on the cinder platform, the employees in charge of the engine caused large quantities of steam to be ejected from the engine for the purpose of scaring the children; that this act was repeated two or three times, and so violent were the discharges that the steam extended some fifteen or twenty feet from the engine and toward and struck the children, and blew the dirt and cinders which were on the platform some twelve or fifteen feet; that in order to escape from the steam, dirt and cinders, the children retreated northward toward the side track, upon which was slowly approaching the empty car, with a brakeman on the west or front end thereof; that as the ejection of the steam was repeated the children retreated further north until the plaintiff and others reached the side track, where she stopped; that she retreated the entire distance backward, with a sun-bonnet on, looking at the engine and the escaping steam all the while, and never looked east or west nor saw or heard the approach of the empty car; and that on account of the great noise caused by the escaping steam she did not

hear the warning given that someone was in danger; that the brakeman in charge of the car, when some sixty feet distance, saw her retreating toward the side track, with nothing to obstruct his view of her; that he made no attempt to stop the car, which was running three or four miles an hour, until someone hallowed that she was in danger, at which time the car was within a few feet of her, then he, for the first time, attempted to stop it and did so in a space of three or four feet, but not until the child was run over and injured.

These facts were testified to by some ten or twelve disinterested witnesses, introduced by the respondent, and substantially the same facts were testified to by two witnesses introduced by the appellant, the only ones introduced who were not members of the train crew which caused the injury. Not only did this evidence make out a prima-facie case, which entitled her to go to the jury, but so overwhelming was the weight of the evidence in her favor that no court could conscientiously disturb the verdict because there was no evidence to support it. No disinterested and fair-minded man can read this record without reaching the conclusion that either the engineer or fireman in charge of that engine, like all practical jokers, saw nothing in the situation except the momentary amusement which the perpetration of the joke would afford him by seeing the children run and scatter by discharging the steam in their midst; but after the steam from the engine disappeared he saw the child writhing in agony, with a crushed leg, and for the first time, after it was too late, considered the danger to others which did attend his foolish act.

The conduct of this servant is as inexcusable as are the actions of that other large class of practical jokers who are ever killing some member of the family or friend with an "empty gun."

As the evidence made out a prima-facie case, it was

the duty of the court to submit it to the jury, and there was no error in refusing the demurrer to the evidence offered by appellant. [Barth v. Railroad, 142 Mo. l. c. 549; Twohey v. Fruin, 96 Mo. 104.] The following cases are particularly applicable to the facts of this case: Lange v. Railroad, 115 Mo. App. 582; Donahoe v. Railroad, 83 Mo. 555, l. c. 556; Reyburn v. Railroad, 187 Mo. 572, l. c. 575; Baker v. Railroad, 147 Mo. l. c. 158.

The first case above cited was by the father to recover damages for loss of services of this same child, caused by her injuries sustained in this same accident.

II. The second assignment of error presented for our consideration is the action of the trial court in giving instruction number one for respondent. The objection urged against this instruction is that it authorized the jury to find for the respondent if they believed that the injury was caused by a defective or insufficient brake, while the record discloses no evidence that the brake was defective or insufficient, and for that reason there was no evidence upon which to base the instruction.

Conceding that the instruction is open to the criticism offered, yet the appellant is in no position to take advantage of the error, for the reason its instructions numbered three, six and seven submit the same issue to the jury.

A party cannot complain of an instruction which is in harmony with one given at his own request. [Thorpe v. Railroad, 89 Mo. 650; Olfermann v. Railroad, 125 Mo. top of p. 416; Hall v. St. Joseph Water Co., 48 Mo. App. l. c. 363.]

III. Instruction numbered two given for respondent is assailed for three reasons: first, because it leaves out of view the element of wantonness and recklessness on the part of the appellant, its agents or employees in running the car over the respondent. By this the

appellant means that the issue submitted to the jury by the instruction is one of negligence, while the issue made by the pleading was one of wantonly and recklessly injuring her, which it is contended is a departure between the pleading and the instruction.

It may be said of this case, as was said by Judge BLACK in the case of Owens v. Railroad, 95 Mo. l. c. 180, that, "The next objection to these instructions is, that the plaintiff cannot sue for an assault and recover for negligence in failing to stop the train. The petition does make some extravagant averments; but, notwithstanding it charges an assault by the servant, it also in terms charges negligence in not stopping the train a reasonable time, and negligence on the part of the servant in pulling her off. The instructions cannot be said to be a departure from the petition. The petition contains all that is in the instructions, and more too, and it follows that it is not a case of declaring upon one cause of action, and a recovery upon another."

The same is true in this case — while there are some extravagant statements to be found in the petittion about how the agents and servants unnecessarily, etc., ran over and injured the respondent, yet the charge of negligence is also found therein, full and complete, as will be seen from the following allegation:

"But on the contrary thereof said brakeman, although he saw the plaintiff in time, or, by the exercise of ordinary care and caution, could have seen her in time, to have stopped said car by the timely use of said defective brake, negligently and carelessly failed to stop said car, and negligently and carelessly permitted it to run over her right leg, thereby crushing and pulverizing the bones thereof in such a manner as to require the amputation thereof just below the knee."

And substantially the same allegations are made as to the acts of the engineer and fireman.

It is thus seen that the instruction is not a depart-

ure from the petition, for the reason that the petition contains all the allegations of fact which the instruction requires to be found, and more, too, and for that reason there is no departure.

The same doctrine is announced in the case of Conway v. Reed, 66 Mo. 346.

But concede that there was such an omission in plaintiff's instruction, yet that omission was fully supplied by defendant's sixth and eighth instructions given, which would have cured all errors had there been any. [Owens v. Railroad, 95 Mo. 169, l. c. 181; Meadows v. Life Ins. Co., 129 Mo. l. c. 97; Hughes v. Railroad, 127 Mo. l. c. 452.]

Nor is there any ground for the contention that respondent was a trespasser while she was standing on the side track. She went to the station to see her teacher depart on the passenger train, which she had a right to do; and when she retreated back to the side track as a result of the escaping steam she was doing the very thing which the evidence shows the employees intended she would do, namely, to flee from the steam for their amusement. And, in addition to this, all of the train crew saw and knew she was on the switch track. So, it is, therefore, useless to argue the question as to whether or not she was injured by the wanton and reckless conduct of appellant's agents and servants in running over her.

The second objection urged against this instruction is that it did not require the respondent to have been in a place of danger before the brakeman was called upon to use ordinary care after seeing her, or after he could have seen her by the exercise of ordinary care. After a careful reading of the instruction, we are of the opinion that the objection is not well founded. While the instruction does not use the words "in a place of danger," yet it does say that if the brakeman "saw the plaintiff on said track in front of

said car in time to have stopped it," etc., which are equivalent to telling the jury that if they believed she was in a "place of danger," etc. We are unable to conceive of a case where a little girl would be in a greater place of danger than standing on a railroad track, oblivious to an approaching freight car, if not properly controlled, and our only wonder is that she escaped with no greater injury and with her life.

The third objection to this instruction is that it ignores the question of contributory negligence. While that is true, yet that question was presented to the jury in instruction numbered three given for respondent, which properly submitted that issue to the jury. [Schmitz v. Railroad, 119 Mo. 256, l. c. 269 and 276, Court in Banc; Baker v. Railroad, 147 Mo. l. c. 168; Blackwell v. Hill, 76 Mo. App. 53; Lange v. Railroad, 115 Mo. App. 589.]

IV. Appellant also complains of instructions numbered three, four, five and six, given for respondent, as being comments upon the evidence.

We are unable to concur in that view of the instructions. They simply tell the jury that if they find the facts therein stated to be true then they may take them into consideration in determining whether or not respondent was guilty of contributory negligence.

It is not only the law that the facts which constitute contributory negligence should be pleaded, but it is the duty of the court in submitting that question to the jury to require them by the instructions to find whether or not those facts are true or false, just in the same manner as the acts of negligence are submitted to the jury. While it is better practice to submit all such facts in one instruction, yet in the absence of some special reason pointed out, we can see no valid legal objection to submitting them in different instructions, especially when, as in the case at bar, none of the in-

structions objected to told the jury that if they found the facts to be true, then they would find her not guilty of contributory negligence; but upon the other hand they told them that they might take them into consideration in passing upon that question.

This court has uniformly held that it was proper to tell the jury that, in passing upon the negligence of a child, it was proper for them to take into consideration its age, intelligence, understanding, experience and surroundings, etc. While that has generally been done in one instruction, but, as stated before, we see no prejudicial error committed by the court for having submitted those matters in different instructions. We have also held that if one person frightens another by his negligence, and that while she is in that condition, she is injured, the jury should consider that fact in passing upon the question of her contributory negligence. [Siegrist v. Arnot, 86 Mo. 200.]

V. The final ground assigned by appellant why the judgment should be reversed, is the action of the court in giving instruction numbered ten on behalf of respondent. It is contended that this instruction leaves it to the jury to fix the amount of the damages as they may deem just and proper.

This objection is not well founded. The instruction tells the jury, that if they find for the plaintiff, then they may take into consideration her physical pain and mental anguish suffered, and such as she may suffer, as shown by the evidence; and, in addition, it told the jury that they might consider to what extent, if any, plaintiff's capacity for earning a livelihood, after her majority, will be impaired by said injury, and for them to return a verdict for her for such sum as they believed to be just and reasonable, not to exceed the sum of $20,000.

This instruction properly pointed out her injuries, which went to make up the elements of her damages,

and told the jury that they should allow her such sum therefor as they thought was just and reasonable. This was equivalent to telling the jury to assess her damages at such sum as they found from the evidence would compensate her for her injuries. This instruction is a verbatim copy of one given and approved by this court in the cases of Schmitz v. Railroad, 119 Mo. l. c. 269, 279, and Haniford v. Kansas City, 103 Mo. 172. These cases properly draw the distinction between the instruction given in the case at bar and the one discussed in Hawes v. Stock Yards Co., 103 Mo. 60, relied upon by appellant.

Clearly, the judgment is for the right party, and it should be affirmed; and it is so ordered.

All concur.