H. R. RUSSELL, Appellant,

v.

John C. KOTSCH, Respondent.

No. 47730.

Supreme Court of Missouri,
Division No. 1.

June 13, 1960.

**406** ▪ ■

Dale, Potter & Flynn, by Whitney W. Potter, St. Joseph, for appellant.

Strop & Strop, St. Joseph, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages from defendant in the sum of $100,000 for personal injuries received in a collision between his station wagon and defendant's automobile. Upon motion of defendant, plaintiff's employer, American Bilt Rite Rubber Company of Chelsea, Massachusetts, was made a third-party defendant and defendant thereafter filed a counterclaim against plaintiff and the third-party defendant in which he sought to recover damages for his personal injuries in the sum of $100,000. (That pleading is referred to as a counterclaim although, as to the third-party defendant, it should be des-

ignated a cross claim.) A trial resulted in a verdict for defendant on plaintiff's claim, and a verdict in favor of plaintiff and the third-party defendant on defendant's counterclaim. Plaintiff has appealed from the adverse judgment on his claim. Defendant did not appeal from the judgment against him on his counterclaim.

The collision in question occurred at about 9 a. m. on April 12, 1958. Plaintiff was midwest sales manager for the American Bilt Rite Rubber Company and on that morning was enroute from Omaha, Nebraska to Kansas City, Missouri in one of his employer's station wagons. The collision occurred on U. S. Highway 36, which runs generally east and west, at a point about three miles east of Troy, Kansas, and approximately 14 miles west of St. Joseph, Missouri. This heavily traveled highway was 24 feet wide and at the point of collision was slightly upgrade toward the east. The casualty occurred at the east driveway entrance into a tract of land on the south side of the highway owned by Chester Doro. Mr. Doro had started to build' a house on this tract and had constructed a circular driveway from the highway onto his land with east and west entrances approximately 180 feet apart. The east driveway angled somewhat to the southwest. A road entered the highway from the north at a point 175 feet east of said east driveway. The defendant owned land in that area but at the time lived in St. Joseph. On the morning in question defendant and his wife left St. Joseph in their automobile and drove west on Highway 36 to the vicinity in question because defendant wanted to talk with Mr. Doro. When they were a short distance from the point of collision defendant's wife told him that Mr. Doro was at the building site and defendant then turned his car toward the southwest in order to proceed across the highway and into the east driveway. As his car was entering the driveway it was struck on the right side by the station wagon plaintiff was driving. The occupants of each car sustained serious injuries.

Plaintiff testified that he was driving his eastbound station wagon at from 50 to 58 m. p. h.; that when he was 60 feet from the point of collision the defendant's car, without any warning or signal, made a left turn across the south side of the highway; that he applied his brakes but didn't attempt to turn either to the left or right; that there were no vehicles behind either of the cars. He described the events immediately preceding the collision as follows:

"Q. Then what was the first indication that you had that Mr. Kotsch was going to turn left? A. When his car made the movement of the left turn.

"Q. What type of movement was that, Mr. Russell? A. Well, it was just turning all at once. In fact, I knew he was turning, I started knowing that there would be something that I would have to do unless he went on off the road because I had no idea there was any road there at all. From where I was I could see no road.

"Q. Now, when you had the first indication, when you saw Mr. Kotsch make the first motion to turn to the left, did you do anything whatsoever? A. Yes. I knew I was going to put on the brakes unless he went off the road. All at once the car seemed to stop dead on the highway.

"Q. Whose car is that? A. This car coming toward me. * * * It seemed to hestitate there, stop there, and I knew then I had to do something awful fast and to apply my brakes and try, if possible, to bring my car to a stop because the road was blocked.

"Q. Were you able to bring your car to a stop before it collided? A. No, I wasn't."

Plaintiff testified further that the right front of his car collided with the right side of defendant's car near the front wheel.

Mrs. Kotsch, defendant's wife, testified that when their car reached a point about 175 feet from the east driveway she told her husband that Mr. Doro "is there at the building," and that her husband then turned on his directional light and began to drive the car diagonally across the road toward Doro's east driveway on the south side of the highway; that she had observed plaintiff's approaching car and it was about 800 feet away when they started toward the driveway; that when they were about 85 feet from the driveway entrance she again saw plaintiff's car and it was five or six hundred feet away; that at that time "it was coming very fast. I just felt like it was flying in the air"; that at the time of the collision the front end of defendant's car was from five to seven feet into the driveway.

The defendant testified that he was 82 years old at the time of the collision; that at the time he saw Mr. Doro he turned on his left directional light and started angling his car toward the east driveway; that he saw plaintiff's car at that time and it was 750 feet or a little farther toward the west; that he did not look toward the west again and did not again see plaintiff's car prior to the collision; that he had been driving from 30 to 35 m. p. h. on the highway and reduced speed to 20 or 25 m. p. h. as he was making the turn to the south; that he was 175 feet east of the east driveway when he started to make the turn and the front of his car was five or six feet into the driveway at the time it was struck.

Chester Doro was an eyewitness to the collision. He stated that from his property a person could see the highway approximately a half mile toward the west and a quarter mile toward the east; that on the occasion in question he was standing on his property on the south side of the highway and heard brakes "screeching" and looked up and plaintiff's car was then "directly in front of me" and was about 70 feet from defendant's car; that the front of defendant's car was three or four feet off the highway pointing southwest and "looked to me like it was standing still"; that plaintiff's car was going in a straight line but

angling a little to the south so that its right side was about two feet off the south edge of the pavement at the time of impact; that the impact knocked defendant's car for a distance of approximately 60 feet; that plaintiff's car left skid marks for a distance of 111 feet west of the point of impact; and there was no other traffic in sight in either direction at the time.

One of the workmen at the scene called the sheriff of Doniphan County, Kansas very shortly after the collision. Plaintiff read in evidence the deposition of the sheriff who stated that he arrived at the scene within five minutes after receiving the call. He described the 111 feet of skid marks in about the same manner as did Mr. Doro. He said he talked with the defendant who stated, " 'I don't know where that thing come from; * * * * I didn't see anything. I went to turn in ' * * *.' " Defendant denied having talked to the sheriff at all following the collision.

There was evidence that the day was clear and the pavement dry; that the overall length of defendant's car was 16 feet 2 inches.

■ Since the casualty occurred in Kansas the substantive law of that state is applicable. However, procedural matters are to be determined by the law of Missouri. Dell'Aria v. Bonfa, Mo.Sup., 307 S.W.2d 479.

■ At the close of all of the evidence plaintiff filed a motion for a directed verdict on the question of liability, leaving to the jury only the question of determining the amount of plaintiff's damages. Upon this appeal his first point is that the court erred in overruling that motion. We have concluded that the court did not err in overruling said motion because, irrespective of any other reason, there was evidence to support defendant's pleaded assignments of contributory negligence on the part of plaintiff. Defendant offered instructions submitting that plaintiff was contributorily negligent in (1) operating his station wagon

at a high and dangerous rate of speed, (2) failing to keep and maintain a reasonably proper watch and lookout, and (3) failing to swerve his station wagon to the left and thus pass to the rear of defendant's automobile. We have heretofore stated the evidence and it need not be restated in connection with our discussion of this point. It would seem sufficient to say (as hereinafter discussed) that a jury reasonably could have found from that evidence that plaintiff was guilty of contributory negligence in the respects submitted. In that situation the trial court could not properly have directed a verdict for plaintiff. Creech v. Blackwell, Mo.Sup., 298 S.W.2d 394.

■ The next contention of plaintiff is that the court erred in giving Instructions 14, 16, and 17 at the request of defendant. Each of those instructions submitted a separate specification of contributory negligence on the part of plaintiff. In his brief plaintiff states that said instructions "all tell the jury plaintiff cannot recover if he is guilty of negligence which directly contributed to cause the collision. This served to unduly and unfairly emphasize defendant's defense of contributory negligence, and his theory of the case, thus prejudicing the jury in his favor and against plaintiff." We have concluded that no prejudicial error occurred in the manner in which the defense of plaintiff's contributory negligence was submitted. In Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W.2d 103, 108, we stated that "Defendant had the right to present its own pleaded theory of plaintiff's contributory negligence and ask separate instructions on its several specifications, although we have indicated that it is better practice to submit all such facts in one instruction. Lange v. Missouri Pac. R. Co., 208 Mo. 458, 478, 106 S.W. 660." We have also said that "Concerning the complaint of overemphasizing the issue of contributory negligence by giving several instructions on it, our rule is to ordinarily follow the judgment of the trial court as to whether or not there was such overemphasis as to be prej-

udicial." Wells v. City of Jefferson, 345 Mo. 239, 132 S.W.2d 1006, 1009. The instant contention was specifically detailed in the motion for new trial. In overruling that motion the trial court apparently found that plaintiff had not been prejudiced by the repetition complained of. Upon the authority of the cases cited we rule this contention adversely to plaintiff.

■ It is also contended that there was no evidence to support the submission of contributory negligence as hypothesized in Instructions 14, 16, and 17. Instruction 14 required a finding that "plaintiff H. R. Russell operated his Ford station wagon at a high, fast and dangerous rate of speed * * * under the conditions then and there existing." It will be noted that the instruction did not submit the violation of a statutory speed limit. Apparently, the applicable portion of the Kansas speed statute is as follows: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." Section 8–532(a), 1959 Supp. to General Statutes of Kansas 1949. The first sentence in the section would appear to be a restatement of the common law rule. Green v. Higbee, 176 Kan. 596, 272 P.2d 1084; Pitts v. Garner, Mo.Sup., 321 S.W.2d 509. Excessive speed is not required to be shown by direct testimony but may be proved by circumstances. Steele v. Goosen, Mo.Sup., 329 S.W.2d 703; Lyon v. Southard, Mo.Sup., 323 S.W.2d 785. In the case before us plaintiff testified that he was going from 50 to 58 m. p. h. However, although going up a slight grade, there is evidence that plaintiff's car laid down skid marks for 111 feet and was still going with such force at the time of the collision that it knocked defendant's car for a distance of approximately 60 feet. Also, Mrs. Kotsch stated that plaintiff's car "was coming very fast. I just felt like it was flying in the air." The evidence was sufficient to reasonably warrant a jury finding of excessive speed.

Instruction No. 16 submitted plaintiff's failure to keep a reasonably proper lookout and No. 17 submitted plaintiff's failure to swerve his station wagon to the left and to thus avoid a collision by passing to the rear of defendant's car. We deem it unnecessary to here detail the evidence supporting the giving of those instructions. A reading of the factual statement heretofore set out will clearly indicate that those instructions were supported by the evidence.

■ We need not review the contentions of plaintiff that Instructions 13 and 15 were erroneous in certain particulars. Both of those instructions dealt with defendant's counterclaim and hypothesized certain acts of negligence on the part of plaintiff upon which to predicate a verdict in favor of defendant and against plaintiff and the third-party defendant upon said counterclaim. Since the verdict of the jury was in favor of plaintiff upon the issues submitted in said instructions the plaintiff could not have been prejudiced thereby and he is in no position to complain thereof. Robbins v. Robbins, Mo.Sup., 328 S.W.2d 552.

■ Plaintiff also contends that the court erred in giving two burden of proof instructions, i. e., No. 5 and No. 19. Since plaintiff offered No. 5 he cannot complain of the action of the court in giving it. His real contention must be that the court should not have given defendant's instruction concerning plaintiff's burden of proof since it had given the one offered by plaintiff. Instruction No. 19 reads as follows: "The court instructs the jury that the burden is upon the plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and unless the plaintiff sustains such burden your verdict will be for the defendant." It is obvious that

said instruction is short, easy to understand, and apparently not objectionable in any way. Plaintiff's Instruction No. 5 also correctly states the rule concerning plaintiff's burden of proof but does so in a manner that tends to minimize the burden and is somewhat more favorable to plaintiff than is Instruction No. 19. In that situation the court did not err in giving Instruction 19 at the request of defendant.

■ A leg brace was worn by plaintiff for about a year following the collision. The next contention briefed is that the court erred in refusing to permit plaintiff to mark that brace as an exhibit and display it to the jury. We need not consider the merits of that point. The exhibit in question, if admissible, would have been relevant only upon the question of the amount of the verdict in the event plaintiff prevailed upon his claim. Since the verdict was in favor of the defendant the jury did not reach the question of damages and plaintiff could not have been prejudiced by the alleged error. Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445.

■ The final points briefed relate to alleged errors of the court in excluding evidence plaintiff sought to elicit upon the cross-examination of M. A. Riddle, a professional engineer, offered by defendant. Upon direct examination Mr. Riddle, in answer to a hypothetical question, stated that when the vehicles were 150 feet apart plaintiff could have avoided striking defendant's car by turning his station wagon a little less than three degrees to the left. Then plaintiff's counsel asked the witness to state, assuming such a turn was made, "where would that driver end up on this particular highway?" An objection was made upon the ground that the witness had not been qualified to answer such a question and same was sustained. Plaintiff contends that said ruling was error. Assuming, for the purpose of our consideration of this point, that the said ruling was erroneous, we are of the opinion that it was harmless.

This, for the reason that shortly thereafter a juror was permitted to ask the witness substantially the same question, and, although stating he "was not qualified to say," Mr. Riddle apparently attempted to answer the question as best he could. In that situation plaintiff could not have been prejudiced by the ruling complained of. White v. White, Mo.App., 312 S.W.2d 167.

■ On cross-examination Mr. Riddle stated that he was not familiar with the speed and braking factor of a vehicle as it related to the skidding distance of vehicles. He was then handed some sort of chart, apparently relating to skidding distances, and was asked the following hypothetical question: "Q. Now Mr. Riddle, looking at that chart which you have before you, you may take for granted that the skid mark of the plaintiff's automobile in this case was 111 feet; and you may further take for granted that the highway No. 36 involved in this accident was new concrete and that it was dry at the time of this accident. From those hypotheses can you compute from that chart the estimated speed of the Russell automobile prior to the accident?" The court ruled that the question was objectionable and refused to permit the witness to answer. Plaintiff contends the ruling was erroneous. We do not agree. In the first place the witness had stated that he was not familiar with the speed factor of a vehicle as related to the braking factor and skidding distance. Furthermore, the hypothetical question did not embody essential facts which would have entered into a computation of the speed of plaintiff's vehicle, such as the fact that plaintiff's car was going up a slight grade, and the fact that plaintiff's car did not come to a stop by reason of the skid alone, but violently collided with defendant's car. The fact that plaintiff's car struck an object at the end of the skid would probably cause any effort to compute his prior speed to be so speculative as to preclude the possibility of propounding a proper hypothetical question or obtaining an acceptable answer under the facts here presented. See

East v. McMenamy, Mo.Sup., 266 S.W.2d 728. For the reasons stated we rule this contention against plaintiff.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.