JOHN H. WITLER et al. v. CITY OF ST. LOUIS, TERMINAL RAILROAD ASSOCIATION and FRUIN-COLNON CONTRACTING COMPANY, Appellants.

Division Two, March 13, 1920.

1. **MEASURE OF DAMAGES: Viaduct: Obstruction of Access.** Where a part of the street, two feet wide, between the seven-foot viaduct and plaintiff's property, had not been elevated but remained as it was before the viaduct was constructed in the street, there is no room in the case for an instruction telling the jury that one measure of plaintiff's damage is the amount of money it would cost to raise the surface of plaintiff's property to a level with the present surface of the viaduct.

2. ———: ———: ———: **Special Benefits.** Where access to plaintiff's property has been completely prevented on the east by the erection of a seven-foot viaduct in the north-and-south adjoining street, and has otherwise been shut off by a ninety-nine-

year lease of the property on the south, north and west to a railroad company and the inclosure thereof by a fence, there can be no special benefits to their property by the construction of the viaduct, and the court is not authorized to instruct the jury to take special benefits into consideration as a set off to the damages sustained by them.

3. ———. Interest: Torts; Instruction: Mutual Error. Where the instructions asked and given for both plaintiff and defendant told the jury to assess the damages, together "with interest on such sum at the rate of six per cent per annum from such date as from the evidence the jury find said obstruction of access" to plaintiffs' property by the construction of a seven-foot viaduct in the adjoining street "was complete," defendant cannot complain that the court instructed the jury to allow interest, even though it be admitted that interest is not allowed in actions *ex delicto*.

4. ———: Excessive: Contradictory- Testimony: Question for Jury. Where the testimony in regard to the value of plaintiffs' property, and the damages thereto caused by the construction of a seven-foot viaduct in the adjoining public street and the complete obstruction of their access thereto, is exceedingly contradictory, but sufficiently substantial, if believed, to support the verdict, and there is nothing in the record to indicate passion or prejudice on the part of the jury, it is the peculiar province of the jury to ascertain and determine the amount of damage, and the court will not interfere with their finding.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones*, Judge.

Affirmed.

*Charles H. Daues* and *H. A. Hamilton* for appellants.

(1) Any damage that respondents may have suffered by reason of destroying their access to Adams Street east of Compton Avenue is not an element which the jury might consider in arriving at their verdict because the property in question did not abut on Adams Street east of Compton Avenue. Dillon on Mun. Corps. (3 Ed.), sec. 730; Rude v. St. Louis, 93 Mo. 408; Gardner v. St. Joseph, 96 Mo. App. 657. (2) Special benefits accruing to property from a change of grade of the

street upon which it abuts should be deducted from the damages occasioned by such change of grade, and a refusal to so instruct the jury is error. Kent v. St. Joseph, 72 Mo. App. 42. (3) An action for damages resulting from a change of grade is an action in trespass, and the rule is well settled in this State that in actions *ex delicto* interest should not be added to the actual damage suffered by plaintiff. Gerst v. St. Louis, 185 Mo. 191; Simmons Hardware Co. v. St. Louis, 192 S. W. 394; Reading v. Railroad, 188 Mo. App. 41. (4) The verdict of the jury is so clearly excessive that the judgment thereon should be reversed.

*George W. Lubke, George W. Lubke, Jr.,* and *Ferris & Rosskopf* for respondents.

(1) The trial court did not err "in instructing the jury to allow as an element of damage to the property in dispute the destruction of access to Adams Street," because: (a) the court did not so instruct the jury; (b) the evidence shows that the viaduct cut off all egress from and ingress to plaintiff's property, except a narrow alley on the north side, thereby practically bottling up the property, and leaving it in a condition wholly unlike that in the cases cited by appellants; (c) had the viaduct not obstructed Adams Street, respondents' property would not have been bottled up, and in that respect, the obstruction on Adams Street caused peculiar and special injury to plaintiffs' property; (d) in this case "circumstances exist in which the right of access is broader than the boundary lines upon the street of the private owner," and the rule in Rude v. St. Louis does not apply. ' Gorman v. Railroad, 255 Mo. 492; Rude v. St. Louis, 93 Mo. 415; Gibbons v. Railroad, 284 Ill. 559; Rigney v. Chicago, 102 Ill. 64; Chicago v. Taylor, 125 U. S. 161; Kansas City v. Cruther, 214 S. W. 109. (2) Isolation of respondents' property from Adams Street by the viaduct was complained of in their petition, and evidence as to access to Adams Street was freely admitted without objection. Instruction 4 requested by appellants and given by the trial

court, told the jury, in arriving at their verdict, to "take into consideration all the facts and circumstances in the whole case." Appellants are bound by the position they assumed upon the trial. Mirrielees v. Wabash, 163 Mo. 486; Harper v. Moose, 114 Mo. 322; Tomlinson v. Ellison, 104 Mo. 112; Menefee v. Diggs, 186 Mo. App. 662. (3) The trial court properly might have instructed the jury to allow as an element of damage the destruction of actress to Adams Street, because, in the light of the facts and authorities referred to in the paragraph next above, appellants had waived the right to object to such instruction. (4) On the measure of damages, the court gave respondents' instruction number 2, and appellants' instruction number 5, neither of which refers to Adams Street, and both of which confine the consideration to the damage caused by the viaduct adjoining or adjacent to respondents' property. Whether respondents' said instruction number 2 is correct or incorrect, appellants are in no position to complain, as it is in harmony with one given at their own request. Rourke v. Railway Co., 221 Mo. 62; Kame v. Railroad, 254 Mo. 197; Lange v. Railway Co., 208 Mo. 475; Williams v. Gas and Electric Co., 274 Mo. 14. (5) Appellant's point that special benefits accruing to respondents' property from the change of grade should be deducted from the damages occasioned by such change, is not well taken, because: (a) the court sufficiently and properly instructed the jury as to the measure of damages in appellants' given instruction 5 and respondents' given instruction 2; (b) the appellants' said refused instruction was properly refused because there was no evidence to support it in respect to the amount of money it would cost to raise the surface of respondents' property, etc. Home Bank v. Towson, 64 Mo. App. 100. (6) Appellants' refused instruction was erroneous, and was properly refused. Its effect, if given, would have been to require the jury to twice deduct the special benefits from the damages. Hickman v. Kansas City, 120 Mo. 122. (7) The trial court did not err in instructing jury to allow interest on

the damages found, because the appellants' given in-
struction on the measure of damages told the jury to
award interest, and appellants cannot complain of
respondents' given instruction in that respect. Lange
v. Railway Co., 208 Mo. 475; Hazell v. Bank, 95 Mo.
66; Williams v. Gas and Electric Co., 274 Mo. 14. In
passing, it is interesting to note that it is the tendency
of courts in modern times to award interest in such
cases. Hampton v. Kansas City, 74 Mo. App. 129;
Cooley on Torts (Students' Ed.), p. 128; 28 L. R. A.
(N. S.) 66, note; 17 C. J. 825-826; Webster v. Railway
Co., 116 Mo. 116; 2 Lewis on Eminent Domain (3 Ed.),
sec. 742, p. 1323.

RAILEY, C.—This action was commenced by plain-
tiffs, in the Circuit Court of the City of St. Louis, on Oc-
tober 27, 1915. It was tried before a jury upon an amend-
ed petition, to which defendants had pleaded by way of
general denials. Respondents, in their petition, allege
that they are the owners of Lots 26, 27, 28 and 29, in City
Block No. 2277, of said city, having a front of 110 feet on
the west line of Compton Avenue, and a front of 130 feet
on the north line of Adams Street; that said property was
bounded on the west by an alley, and on the north by an
alley, on which there are now situated, and for many
years have been situated, the dwelling buildings, with
appurtenances, known and numbered as 319 South Comp-
ton Avenue and 3203 Adams Street. It is further alleged
in said petition that said land is improved, and that there
are erected thereon two substantial brick houses and
various sheds, with other appurtenances used in connec-
tion therewith; that the City of St. Louis, by Ordinance
No. 25,367, approved July 20, 1910, changed the grade
of Compton Avenue adjacent to respondents' property
and provided for the construction of a viaduct over the
railroad tracks, several blocks south of respondents'
property; that said viaduct reached the old grade of
Compton Avenue at a point ten feet south of the north
line of respondents' property; that the viaduct practi-

cally occupied the entire width of Compton Avenue, and by reason of the construction thereof respondents' access to Compton Avenue was destroyed. The petition also alleges that respondents' access to Adams Street, east of Compton Avenue, but upon which street plaintiffs' property did abut, was also destroyed. It is further alleged that before the building of said viaduct, respondents' property was reasonably worth $40,000, and that by reason of the construction of said viaduct it has been damaged in the sum of $25,000, etc.

There was substantial evidence offered upon the part of plaintiffs tending to show that the property in controversy consists of a tract of land lying at the northwest corner of the intersection of Compton Avenue and Adams Street, in said City of St. Louis, having a frontage of 110 feet on Compton Avenue, extending back westward in uniform width 130 feet to an alley, and bounded on the south by Adams Street, and on the north by an alley 15 feet wide. On this land is a two-story brick house facing Adams Street, the south line of which house is twenty-four feet and four inches north of the north line of Adams Street, and the east side of said house is about eight feet from the west line of Compton Avenue. Near the northeast corner of said land is a brick dwelling house, two and one-half stories high, extending to an alley on the north, and extending to within about seven feet of the west line of Compton Avenue. These two dwelling houses stood upon the same ground at the time of the building of said viaduct, for many years before, and were there at the time of trial. Prior to the erection of the viaduct, there were also upon said ground several outbuildings used in connection therewith. At the time of trial, and long prior thereto, the two-story building, facing on Adams Street, was occupied by a tenant, and another tenant occupied the house facing on Compton Avenue.

To the south, west and north of respondents' said tract of land, is a large tract of land, known as the Rankin tract, which had never been improved by the erection

of buildings thereon. Said Rankin tract had been duly platted into lots, streets and alleys, but the streets and alleys had never been used or improved, and existed only ' on paper.

Adams Street, east of Compton Avenue, was a street duly made, paved with macadam and curbed, and was much used by the public; but west of Compton Avenue it had never been made or paved, and was used as a part of respondents' premises, as far west as said premises extended, 130 feet, and served as an outlet for respondents' premises to .Compton Avenue. Adams Street has never been used as a street west of a point 130' feet west of Compton Avenue.

At the time of the building of the viaduct, Compton Avenue was, and for many years prior thereto had been, a well improved thoroughfare, and in the neighborhood of respondents' property, it was paved with granite blocks, having curbing and sidewalk, and was much used for hauling.

At the time of the building of said viaduct, the property on the south side of Adams Street, and east of Compton Avenue, and for a considerable distance south, was used for the purpose of terminal railroad yards. It was filled with railroad tracks, and the latter came up to Adams Street and ·Compton Avenue, leaving only a space for loading wagons. West of Compton Avenue, there were no railroad tracks north of Adams Street, and none for several blocks south of Adams Street. Adams Street and Compton Avenue, at their intersection, were on a level and of the same grade.

Said Rankin tract. extended north of respondents' property one block to Market Street, south of said property from Adams Street, across Bernard Street and Scott Avenue, to Atlantic Street, in which latter street railroad tracks were running east and west, and extending westwardly 800 or 900 feet to Rankin Avenue. Said Rankin tract was a rough prairie, and was used for dairy purposes. About 55 feet west of respondents' property was a creek or drainage outlet, for said tract, about eight feet

deep.   Said Rankin tract was enclosed by fences, and respondents' property was cut off thereby on the north, on the west and on the south.

The wall of the viaduct was completed June 21, 1911. The change of grade begins at the northeast corner of respondents' property.   The original grade from that point southward, took a downward course from said northeast· corner, southward to Adams Street, and the said houses. had been built in reference to the original grade.   The grade for the viaduct runs higher from that point as it extends southward, so that at the north line of Adams Street the elevation of the deck of the viaduct is seven feet and one and one-half inches above the old grade, and in the middle of Adams Street it was still more.   Opposite the south line of the house facing on Adams Street, the deck of the viaduct on Compton Avenue is six feet and five inches above the old grade of the street at that point, and the railing extends three feet and five inches above the deck, and the posts extend to an elevation of four feet above the viaduct, making the total elevation of the railing above the old grade at that point, nine feet and ten inches, and of the railing posts, ten feet and five inches.

The viaduct in front of respondents' property occupies the entire width of Compton Avenue, except about two feet on the west side thereof, leaving a space of about two feet between the viaduct wall and the west line of Compton Avenue.   The viaduct in front of plaintiffs' property and extending southward across Adams Street, and for some distance further south, is supported by a solid wall, with a railing on the top and sides of the viaduct.   About one block south of Adams Street, the deck of the viaduct is supported by piers or pillars, and assumes the form of a bridge, permitting railroad tracks to run underneath.   On the west side of the viaduct, from the north end of the opening under the same to respondents' property, the ground rises 12 feet, and is too steep for switch tracks. The openings under the viaduct to the south of respond-

ents' property, for some distance,    are too · low for
trains to pass through.

The nature and extent of the obstruction caused by
the building of the viaduct is more clearly shown by
the photographs introduced in evidence by plaintiffs
marked Exhibits I, J, K, L, M, and N. Respondents
likewise introduced in evidence their Exhibit O, which
is a photograph of their property ond its surroundings.
As everything is sufficiently clear without them, we have
not deemed it necessary to incorporate either of said
photographs as a part of the statement herein.

Plaintiffs' evidence also tends to show that the
effect of the building of the viaduct was to cut off all
access to respondents' property from the public streets
of the city, except such as might be had through the
15-foot alley on the north side of said property; that
prior to the building of the viaduct, the water drained
from respondents' property onto the street and was
carried away by the gutter; that since that time, the
water drains toward the house and settles there.

The Rankin tract, surrounding respondents' prop-
erty on three sides, not long prior to the building of the
viaduct, had been leased for a term of 99 years, to the
Terminal Railroad Association, the rental being fixed
at about four per cent, on a base valuation of $3 per
square foot.

Respondents examined four witnesses, who testi-
fied as to the difference in the market value of their
property just before the viaduct was built, and its
market value just after its completion.  The property
in dimensions being 110 feet by  130 feet, contained
14,300 square feet. Mr. Charles W. Honegger, who quali-
fied himself to testify, gave it as his opinion that the
net damage to plaintiffs' property by reason of  the
construction  of  the  viaduct was  $21,450.  Messrs.
Frederick G. Zeibig, Fletcher R. Harris and James M.
Franciscus, who were men of experience in buying
and selling all kinds of real estate in said city, each
testified that the market value of respondents' proper-
ty, by reason of the building of said viaduct, was reduc-

ed 50 per cent. They valued said property at $2 per square foot, or $28,600, just prior to the building of the viaduct, and at $1 per square foot, or $14,300, immediately after the erection of the viaduct; a reduction of $14,300.

The evidence of defendants, in respect to respondents' claim of damages, is stated in substance by appellants upon page 5 of their brief, as follows: The appellants introduced witnesses who qualified as experts on the value of the real estate in question, and these witnesses uniformly expressed as their opinion that, considering the respondents' property as railroad property, it was not damaged by the construction and maintenance of the Compton Avenue viaduct. These witnesses gave it as their opinion that the property, considered as residence or tenement property, was damaged by the construction of the viaduct, but that the benefits accruing to said property from the construction of the viaduct and the subsequent vacation of the public streets between respondents' property and the railroad tracks, which made the same valuable for railroad purposes, more than off-set the damage which the property may have suffered as tenement or residence property.

At the close of all the evidence in the case, appellants asked the court to direct a verdict in their behalf, which said request was refused, and an exception saved.

To obviate a repetition, the instructions given, refused or modified, will be considered, as far as necessary, in the opinion.

On May 8, 1917, during the April Term of said court, the jury returned the following verdict:

"We the jury in the above cause find in favor of the plaintiffs on the issues herein joined and assess their damages at the sum of $10,000, Ten Thousand dollars, with interest thereon at six per cent, per annum from June 21, 1911, to May 8, 1917, amounting to $3,528.33, three thousand, five hundred twenty-eight

and 33-100 dollars, aggregating thirteen thousand, five hundred twenty-eight and 33-100 dollars.''

Judgment was entered in due form upon the verdict aforesaid on said 8th day of May, 1917.

Defendants, in due time, filed their motions for new trial and in arrest of judgment. Said motions were overruled and the cause duly appealed by them to this court.

I. Appellants assign four errors, alleged to have been committed by the trial court, to their prejudice, which will be considered in the order presented in their brief, as follows:

''I. The court erred in instructing the jury to allow as an element of damage to the property in dispute the destruction of access to Adams Street east of Compton Damages. Avenue, because the property in question did not abut upon that part of Adams Street.''

We are not advised in the assignment of errors, nor under appellants' ''Points and Authorities,'' which of the instructions given at the instance of plaintiffs is complained of under this head. W,e might, therefore, pass this assignment as too indefinite for consideration, but as appellants, in their argument criticise plaintiffs' instruction numbered one, we presume the assignment was intended to cover same.

This instruction is lengthy and covers several questions at issue in the case. In said instruction, the jury were required to find that respondents are the owners of the property in controversy; that Compton Avenue and Adams Street, throughtout the year 1911, and prior thereto, were open, public streets or highways, in the City of St. Louis, Missouri.; that prior to 1911, the grade of Compton Avenue and Adams Street had been established by said city; that Compton Avenue, in 1911, and prior thereto, had been paved, and improved with sidewalks, gutters and curbing, in accordance with the established grade aforesaid; that appellants, under the ordinance aforesaid, caused the grade of Compton Avenue to be raised and changed, ''and changing said grade caused

said streets to be obstructed by the viaduct or bridge mentioned in evidence, and that thereby the egress from said real estate to said Compton Avenue and to said Adams Street east of said Compton Avenue and the ingress from said streets into and upon said real estate were destroyed, . . . if the jury so find . . . the plaintiffs are entitled to recover from said defendants or any of them who caused said change of grade as aforesaid.''

In our opinion, the contention of appellants, in respect to this instruction, is absolutely devoid of merit. It does not deal with the question of damages, presented in other instructions, nor does it directly or inferentially authorize the jury to find that plaintiffs' property was damaged on account of the obstruction in Adams Street.

Before the viaduct was built, plaintiffs had access to Compton Avenue east of their property, and could pass down Compton Avenue, across and into Adams Street. After the viaduct was completed on June 21, 1911, access to plaintiffs' property was cut off from both Compton Avenue and Adams Street on the east. This is what the jury were required to find, and there is no controversy over this question, as shown by appellants, upon page 10 of their brief, where it is said:

''Respondents' property is located on the northwest corner of Adams Street and Compton Avenue, both public streets in the City of St. Louis. The grade of Adams Street was not changed, but remained the same after the construction of the viaduct. There were solid abutments in Compton Avenue and across Adams Street which destroyed respondents' access to Adams Street east of Compton Avenue.''

There was no controversy at the trial over the fact that the building of the viaduct on Compton Avenue east of plaintiffs' property, and the extension of same across Adams Street, left plaintiffs' property without any access from the east over either of said highways.

We, therefore, conclude, that plaintiffs' instruction numbered one is not erroneous; that it did not authorize the jury to assess damages in favor of plaintiffs, on

account of the obstruction in Adams Street, nor does said instruction deal with the subject of damages. The above assignment of error is accordingly overruled.

II. Appellants claim, that: "The court erred in refusing to instruct the jury, upon the request of appellants, that they should deduct from the amount of damage caused by the construction of the viaduct, any special benefits which may have accrued to the property by reason of the construction of said viaduct."

This assignment might well be ignored, as it does not designate which instruction, if any, was refused, nor is there anything in the "Points and Authorities" referring to any refused instruction. We find, however, on perusing appellants' argument, on page 13 of their brief, that the court is charged with error in refusing defendants' instruction numbered 2, which reads as follows:

Instructions.

"The court instructs the jury that in case you find in favor of the plaintiffs, the damages which may be assessed against the city in favor of the plaintiffs may be measured in either one of two ways:

"First, you may take the difference between the reasonable market value of said property immediately before the grade of the street was changed and said viaduct constructed, as shown by the evidence, and the reasonable market value of said property immediately after such change, if you find that the market value after the change was less than the value before, and so arrive at the damages which plaintiff has sustained; in other words, the difference in market value before and after the improvement of the street may be taken as the measure of damages, and in considering the market value after the improvement you shall not take into consideration any general benefits which may have accrued to said property by reason of the improvement, but you shall consider any special benefits, as defined for you in a subsequent instruction.

"Or, second, you may consider the amount of money which it has cost or would reasonably cost the plaintiffs

to raise the surface of their property and the improvements which were on said property at the time of said change of grade, to the same relative position to the present grade as they formerly occupied to the old grade of said street.

"And you are instructed that the defendant, the City of St. Louis, is entitled to have the damages fixed by whichever of the above two methods will show the least amount of damages to have accrued."

This instruction, as asked, was properly refused by the court for several reasons: First, taken as a whole, there was no evidence adduced at the trial in support of. the second paragraph of said instruction. Second, taking into consideration the location of plaintiffs' property and the viaduct on the east of same, with a two-foot space between respondents' property and the viaduct, we are at a loss to understand, as a practical proposition, how plaintiffs' property could have been made of any value by raising it to a level with the viaduct. At least, there was no evidence offered sustaining said theory. Third, we are of. the opinion that the instruction was erroneous, in requiring the jury to take into consideration any special benefits, which it is claimed inured to the benefit of respondents' property by reason of the change of grade and building of the viaduct on Compton Avenue.

Special Benefits.

Cases may arise in which the principle contended for by appellants should be applied, but this is not one of that class. It is undisputed that before the grade of Compton Avenue was changed, and the viaduct constructed thereon, plaintiffs had abundant access to Compton Avenue on the east side of their property, and likewise had the use of Adams Street, where it is intersected by Compton Avenue. These defendants, by the change of said grade, and the construction of said viaduct, have shut off all access to plaintiffs' property from either Compton Avenue or Adams Street. There is no way of escape for respondents from their property to the southward, none to the westward, and none to the north-

ward, except by a 15-foot alley. The Rankin property, surrounding that of plaintiffs, is held under a 99-year lease by the defendant Terminal Railroad Association, of St. Louis, Missouri. In other words, the property of respondents has been completely bottled up by the acts of appellants, except as to the alley on the north, and yet we are blandly asked to reverse this case because the trial court refused to finish a confiscation of respondents' property, by directing the jury to charge the same with special benefits. Upon the facts presented in this record, it would have been a travesty upon the law to have given defendants' instruction two, as asked.

III. Appellants' third assignment of error, reads as follows:

"The court erred in instructing the jury to allow interest on the amount which they found the property to have been damaged by the construction of the viaduct, because interest is not allowed in actions *ex delicto.*"

Interest.

No mention is made in above assignment as to any particular instruction given, nor is any reference made in the "Points and Authorities" to any such instruction. Even the argument fails to point out any instruction which it is claimed was erroneous. We find, upon turning to the abstract of record, that the trial court, at the instance of respondents, gave instruction numbered 2, and at the instance of appellants gave instruction numbered 5, which read, when placed in parallel columns, as follows:

PLAINTIFFS' GIVEN INSTRUCTION No. 2.

"If you find in favor of the plaintiffs, you will assess their damages at such sum, not exceeding $25,000, as represents the difference, if any, between the reasonable market val-

DEFENDANTS' GIVEN INSTRUCTION No. 5.

"The jury are instructed that the measure of damages, if any, sustained by plaintiffs, is the dif ference in the market value of said property immediately before and after the

ue of plaintiffs' said property, immediately before and after the raising and changing of the grade of Compton Avenue adjoining plaintiffs' property, and the obstruction of the access thereto by reason of said viaduct or bridge and directly caused thereby, if you so find, together with interest on such sum so found, at the rate of six per cent per annum, from such date as from the evidence the jury find and believe said obstruction of access was complete."

changing of the grade of Compton Avenue on account of the construction of the Compton Avenue viaduct, adjacent to plaintiffs' property, with interest on such sum, if any, at the rate of six per cent per annum from such date as from the evidence the jury find said abutment to said viaduct was complete."

By reason of the foregoing, appellants are in no position to complain of an instruction which is in harmony with the one given at their request. [Lange v. Mo. Pac. Ry. Co., 208 Mo. 458, l. c. 475; Ellis v. Met. St. Ry. Co., 234 Mo. l. c. 676; Kame v. Railroad, 254 Mo. l. c. 197; Williams v. Gas. & Electric Co., 274 Mo. 1, l. c. 14; Lareau v. Lareau, 208 S. W. 241, l. c. 245, and cases cited; Bettoki v. Northwestern Coal & Mining Co., 180 S. W. l. c. 1023.] The foregoing assignment is accordingly overruled.

IV. Appellants' fourth and last assignment of error, reads as follows:

"The court erred in refusing to set aside the verdict of the jury on the ground that the same was grossly Excessive excessive and unwarranted by the evidence and Damages. physical facts."

In view of the above contention, we have carefully read the record, and have made a very full statement of the facts in the case. We find nothing in the record to indicate either passion or prejudice upon the part of the jury. The testimony of the witnesses, in respect to the

value of plaintiffs' property and the damages sustained, on account of the change of grade and construction of said viaduct, is exceedingly contradictory, and presents a case where it was the peculiar province of the jury, to ascertain the damages sustained.

V. Finding no error in the record of which defendants can legally complain, we affirm the judgment. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.