

# SUPREME COURT OF MISSOURI
## en banc

DEBORAH BARKLEY,                     )
                                     )
                          Appellant,       )
                                     )
v.                                   )        No. SC94253
                                     )
MCKEEVER ENTERPRISES, INC. D/B/A )
PRICE CHOPPER,                       )
                                     )
                          Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable James F. Kanatzar, Judge

*Opinion issued February 24, 2015*

Deborah Barkley ("Barkley") sued McKeever Enterprises, Inc. ("Price Chopper"), alleging various torts arising out of her 46-minute detention at Price Chopper for suspected shoplifting. At the close of the evidence, Barkley elected to submit only her claims for false imprisonment and battery to the jury. The jury found for Price Chopper on both claims. Barkley appeals, and the judgment is affirmed.

## *Background*

On May 24, 2009, Barkley went to Price Chopper in Independence. While shopping, she took various items (e.g., notebooks, a book light, toothpaste, and batteries) from the shelves and placed them in a reusable shopping bag she carried next to her

purse. In her other hand, Barkley carried other empty reusable shopping bags. Barkley's husband, who also went shopping with her, placed various items in a grocery cart. When they met to check out, Barkley's husband unloaded the cart onto the conveyor belt while Barkley walked past the register and handed the empty reusable bags to an employee for use in bagging their purchases. Barkley continued to carry the bag concealing her other items next to her purse. She made no effort to pay for the items in that bag, and they had not been scanned along with her husband's purchases. When the other items were paid for, Barkley headed for the exit.

Two loss prevention employees had been watching Barkley on Price Chopper's surveillance system. When they saw Barkley head for the exit without paying for the items in the bag next to her purse, they stopped her. They confiscated the bag containing the unpurchased items, escorted her to the store's security office, and told her she was being detained on suspicion of shoplifting. Barkley's husband waited for her in the nearby customer service area.

Inside the security office, Barkley and the two male loss prevention employees were joined by a female employee in accordance with Price Chopper's policy for female shoplifting suspects. Barkley was told to sit on a bench in the office while the employees searched her purse, itemized and photographed the merchandise Barkley had concealed in the reusable shopping bag, and began preparing their report. Approximately four minutes after Barkely was first detained, the employees summoned the police when they determined that the price of the items in Barkley's bag exceeded the store's threshold for prosecution.

As the employees were processing the items and preparing their report, Barkley stood and approached two of the employees from behind. The third employee, who could see her approaching, told Barkley to stay seated on the bench. Barkley refused and continued to approach the other employees. When they turned and saw her, one of them moved to handcuff her. Barkley resisted and, during the scuffle, she was pushed up against a file cabinet. When the employee cuffed one of her hands and started to handcuff the other hand behind her back, Barkley complained that this would be too painful. The employee acquiesced and handcuffed Barkley's hands in the front instead. He told Barkley to return to the bench, but she refused again.

At this point, one of the employees reached out to guide Barkley back to the bench. She evaded this employee and ran for the door. Barkley was able to open the door because her hands were cuffed in front of her. But, before she could get the door open enough to escape, the employees caught up to her. While one of them pushed the door shut and tried to pull Barkley's hands from the door handle, the other employee knocked Barkley's legs out from under her. With Barkley on the floor, the employees were able to move her handcuffs to the back so she would not be able to use her hands again. Then, they attempted to help Barkley up and over to the bench. She refused their assistance, however, and remained sitting on the floor until the employees completed their report.

When the report was finished, the employees moved Barkley's handcuffs back to the front and, again, tried to help her off the floor. Barkley did not resist this time, and the employees assisted her to the bench. Approximately eight minutes later, or about

46 minutes after Barkley was first detained near the store's exit, the police arrived to arrest Barkley and escort her from the store. She was charged with shoplifting in Independence Municipal Court but later was acquitted of this charge.

Barkley sued Price Chopper for actual and punitive damages arising out of her detention in the store. She alleged that: (1) Price Chopper had been negligent in supervising its loss prevention employees; (2) Price Chopper committed malicious prosecution by instigating criminal charges that ended in her favor; and (3) Price Chopper's employees invaded her privacy and committed assault, battery, and false imprisonment. Price Chopper pleaded that the merchant's privilege and section 537.125[1] protected it from all liability to Barkley for the acts alleged.

In October 2012, the case was tried to a jury. At the close of the evidence, Barkley abandoned all of her claims except false imprisonment and battery. These were submitted to the jury, together with Price Chopper's affirmative defense to each count. The jury found for Price Chopper on both counts. Barkley sought a new trial on the grounds that the trial court erred in submitting an affirmative defense to the charge of battery and that the trial court erred in admitting and excluding certain evidence. Her motion was overruled. Barkley appeals, and this Court has jurisdiction. *See* Mo. Const. art. V, § 10.

The Court rejects Barkley's argument that the merchant's privilege does not extend to claims of battery and her argument that the privilege ends when the merchant's

---

[1]   Unless otherwise stated, all statutory references are to the Revised Statutes of Missouri, 2000.

property is recovered.  Instead, a merchant is privileged to detain a person – in a reasonable manner and for a reasonable period – if the merchant has reasonable suspicion or probable cause to believe that person is shoplifting.  The merchant is entitled to recover the property but may continue the detention to determine whether the person actually was shoplifting and – if so – to summon the police and instigate criminal proceedings.  This privilege is not limited to claims of false imprisonment.  Instead, as long as the detention is conducted in a reasonable manner and for a reasonable time, the privilege protects the merchant from all liability to the person detained, civil or criminal, including liability for an assault or battery committed to effectuate the detention.  Accordingly, the judgment in favor of Price Chopper is affirmed.

*Analysis*

The privilege of a merchant to detain a suspected shoplifter has long been recognized in Missouri.  At first, the privilege applied only if the suspect in fact was guilty of the crime.  *See Pandjiris v. Hartman*, 94 S.W. 270, 272 (Mo. 1906) (the "only plea of justification or excuse is that plaintiff was guilty of the crime for which he was arrested").  As a result, no matter how reasonable the merchant's suspicion may have been, only a subsequent conviction would protect the merchant from civil liability to the person detained.  *See, e.g., Titus v. Montgomery Ward & Co.*, 123 S.W.2d 574, 578 (Mo. App. 1938) (concluding that, because the employee "acted indiscreetly, or with bad judgment, or through mistake, and arrested, restrained and searched a person not guilty, her employer is responsible").

5

In 1941, however, this Court abandoned this restriction. Expressly overruling

*Pandjiris*, this Court held:

> In an effort to harmonize the individual right to liberty with a reasonable
> protection to the person or property of the defendant, it should be said in
> such a charge of false imprisonment, where a defendant had probable cause
> to believe that the plaintiff was about to injure defendant in his person or
> property, even though such injury would constitute but a misdemeanor, that
> probable cause is a defense, provided, of course, that the detention was
> reasonable.

*Teel v. May Dep't Stores Co.*, 155 S.W.2d 74, 78 (Mo. 1941) (quoting *Collyer v. S. H.*

*Kress & Co.*, 54 P.2d 20, 23 (Cal. 1936)) (quotation marks omitted).

Based on the evidence in that case, *Teel* holds as a matter of law that there was no

"unreasonable or unlawful detention of plaintiff … up to the time of obtaining the return

of the goods." *Id.* at 79. But, rather than let the plaintiff go when they recovered the

stolen merchandise, the store employees detained her until she signed a confession

admitting to the attempted theft. The Court held that this was actionable. *Id.* at 80.

If the employees did not believe plaintiff's explanation, the Court noted that the

employees "might have been within their rights if they had called the authorities to take

[Plaintiff] into custody and preferred charges against [Plaintiff] …." *Id.* at 79. But *Teel*

holds it is "well settled that unreasonable delay in releasing a person, who is entitled to be

released, or such delay in calling, taking him before or turning him over to proper

authorities … would thereafter amount to false imprisonment." *Id.* As a result, the Court

remanded the case for a new trial because "neither the privilege to restrain plaintiff for

the purpose of obtaining return of the goods or in order to turn her over to the proper

authorities … would give [a merchant] any authority to hold plaintiff to compel her to

6

give a confession in violation of her civil rights under the Constitution of this State." *Id.*
at 80.

The General Assembly codified *Teel* in 1961 in what is now section 537.125 (later
amended in 1985). Subsection 2 of this statute provides:

> 2. Any merchant, his agent or employee, who has reasonable grounds or
> probable cause to believe that a person has committed or is committing a
> wrongful taking of merchandise or money from a mercantile establishment,
> ***may detain such person in a reasonable manner and for a reasonable
> length of time for the purpose of investigating whether there has been a
> wrongful taking of such merchandise or money***. Any such reasonable
> detention shall not constitute an unlawful arrest or detention, nor shall it
> render the merchant, his agent or employee, criminally or civilly liable to
> the person so detained.

§ 537.125.2 (emphasis added).

The remaining two subsections of section 537.125 expound on the privilege set

forth in subsection 2. Subsection 3 explains when that privilege is triggered, i.e., what

constitutes "reasonable grounds or probable cause to believe that a person has committed

or is committing a wrongful taking." It states:

> 3. Any person ***willfully concealing unpurchased merchandise*** of any
> mercantile establishment, either on the premises or outside the premises of
> such establishment, ***shall be presumed*** to have so concealed such
> merchandise with the intention of committing a wrongful taking of such
> merchandise within the meaning of subsection 1, and the finding of such
> unpurchased merchandise concealed upon the person or among the
> belongings of such person ***shall be evidence of reasonable grounds and
> probable cause for the detention*** in a reasonable manner and for a
> reasonable length of time, of such person by a merchant, his agent or
> employee, in order that recovery of such merchandise may be effected, and
> any such ***reasonable detention shall not be deemed to be unlawful, nor
> render such merchant, his agent or employee criminally or civilly liable***.

7

§ 537.125.3 (emphasis added). Subsection 4 then describes the breadth of the privilege and the liabilities from which the merchant is protected:

> 4. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed a wrongful taking of property, as defined in this section, and who has detained such person and investigated such wrongful taking, *may contact law enforcement* officers and *instigate criminal proceedings* against such person. Any such contact of law enforcement authorities or instigation of a judicial proceeding shall not constitute malicious prosecution, *nor shall it render the merchant, his agent or employee criminally or civilly liable to the person so detained* or against whom proceedings are instigated.

§ 537.125.4 (emphasis added).

Accordingly, under the principles first adopted in *Teel* and later codified in section 537.125, a merchant is privileged to detain – in a reasonable manner and for a reasonable time – any person the merchant has a reasonable suspicion or probable cause to believe is committing (or has committed) a wrongful taking of the merchant's property. The merchant may detain such a person for the purpose of recovering the merchandise and also for the purpose of investigating whether a wrongful taking actually occurred (or was occurring) and, if so, for the purpose of contacting law enforcement and instigating criminal proceedings. Provided this detention is conducted in a reasonable manner and for a reasonable time, the merchant is protected from all liability (civil and criminal) to the person detained.

8

## I. Point One

At trial, Barkley argued that Instruction No. 9[2] (i.e., the verdict director on her claim of battery) should be given by itself. She objected to the proposed "tail" to this instruction referring the jury to Instruction No. 10[3] (i.e., Price Chopper's affirmative defense to the battery claim). Specifically, Barkley objected that Instruction No. 10:

> … submits inapplicable and inappropriate defenses to plaintiff's battery claim. It misstates the law with respect to plaintiff's battery claim and the law with respect to defenses to battery. Further, we object because it is not supported by the evidence and misleads the jury as to the law and the evidence.

In her motion for a new trial, Barkley restated this objection and added a new claim that Instruction No. 10 constitutes "prohibited conjunctive submission of multiple

---

[2] As given, Instruction No. 9 reads:

Your verdict must be for plaintiff if you believe:

> First, defendant intentionally pulled plaintiff's arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her hands were handcuffed behind her back, and

> Second, defendant thereby caused plaintiff bodily harm,

unless you believe that plaintiff is not entitled to recover by reason of Instruction Number 10.

[3] As given, Instruction No. 10 reads:

Your verdict must be for defendant [Price Chopper] on plaintiff Deborah Barkley's claim for battery if you believe:

> First, plaintiff Deborah Barkley either refused to follow defendant's loss prevention officers' instructions or attempted to flee the loss prevention office, and

> Second, defendant's loss prevention officers handcuffed and leg swept plaintiff for the purpose of resisting plaintiff's attempt to flee the loss prevention office, and

> Third, defendant's loss prevention officers used only such force as was reasonable and necessary to prevent plaintiff from fleeing the loss prevention office.

9

theories of defense all of which are not supported by either the law or the evidence, see

MAI 1.02." She does not raise this unpreserved "multiple theories" claim on appeal,

however, and that claim is abandoned.

In the court of appeals, Barkley asserted two claims based on Instructions Nos. 9

and 10.[4] Her first point relied on in that brief states:

> **Point I**: The Trial Court erred in refusing Plaintiff's proposed verdict
> directing instruction submitting her battery claim which did not include
> reference to the affirmative defense of resisting invasion of property as
> hypothesized in M.A.I. instruction 32.10 and instead giving, at Defendant's
> request and over Plaintiff's objection, Instruction Number 9, which
> included reference to such defense, and Instruction Number 10, submitting
> such defense because such refusal and submissions do not comply with the
> requirements of Rule 70.02 V.A.M.R. in that Plaintiff's proposed verdict
> directing instruction was applicable to Plaintiff's battery claim and thus was
> required to be given to the exclusion of any other instructions on the same
> subject and because Instructions Numbers 9 and 10 direct the jury to find
> for Defendant if it believed that Defendant used reasonable force to prevent
> Plaintiff from fleeing the Loss Prevention Office and such facts do not
> constitute a defense to battery under the applicable law and such
> instructions thereby misstated the applicable law, misdirected the jury and
> misled the jury resulting in prejudicial error.

Under Rule 84.04(d)(1)(A), an appellant's point relied on must first identify the

action of the trial court that is being challenged. In Point I, Barkley challenges the trial

court's decision to reject her verdict director on the battery claim and to give, instead,

Instructions Nos. 9 and 10, presenting both the battery claim and an affirmative defense

to that claim. Next, under Rule 84.04(d)(1)(B), the appellant must use the "because"

clause to "state concisely the legal reasons for the appellant's claim of reversible error."

---

[4]  Barkley sought to supplement these claims after this Court granted transfer, but, as discussed below, Rule 83.08(b) does not permit an appellant to alter the basis of claims raised in the court of appeals.

10

Here, Barkley claims it was error to give Instructions Nos. 9 and 10 because they "do not comply with the requirements of Rule 70.02 V.A.M.R." Finally, Rule 84.04(d)(1)(C) requires the appellant's point relied on to explain why, "in the context of the case, those legal reasons support the claim of reversible error." Barkley offers two explanations why Instructions Nos. 9 and 10 violate Rule 70.02. First, she explains that "Plaintiff's proposed verdict directing instruction was applicable to Plaintiff's battery claim and thus was required to be given to the exclusion of any other instructions on the same subject." Second, Barkley explains that there is no affirmative defense allowing Price Chopper to use force to prevent her from fleeing, even if the force used was reasonable.

The determination of whether a jury was instructed properly is a question of law, which this Court reviews de novo. *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 13 (Mo. banc 2013). That review considers the evidence "in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Bach v. Winfield-Foley Fire Protection Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). Even if the giving of a particular instruction was error, however, this Court will vacate a judgment based on the jury's verdict "only if the error resulted in prejudice that materially affects the merits of the action." *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 767 (Mo. banc 2010).

As set out in her first point, Barkley claims that Instruction No. 9 should have been given without the "tail," referring to the affirmative defense in Instruction No. 10. She argues that, because Instruction No. 9 is the battery instruction provided in MAI 23.02, it must be given by itself and without reference to any other instruction. For

11

support, Barkley cites Rule 70.02(b), which provides: "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Barkley's claim fails.

MAI 23.02, the pattern verdict director on which Barkley relies, specifically requires that the following language be added whenever an affirmative defense is submitted: ["unless you believe that plaintiff is not entitled to recover by reason of Instruction Number _____ *(here insert number of affirmative defense instruction)*]." The "tail" on Instruction No. 9 complies with this requirement; therefore, the trial court did not err in giving Instruction No. 9 in that form. *See Edgerton v. Morrison*, 280 S.W.3d 62, 68 (Mo. banc 2009) (denying a similar claim and holding that the addition of the phrase "as submitted by Instruction No. 11" to verdict form "did not mislead the jury").

Barkley's alternative argument in Point I is that Price Chopper was not privileged to use any force – even reasonable force – to prevent her from fleeing once the store employees had recovered the merchandise hidden in her bag. In other words, she contends that the protection of the merchant's privilege does not extend to claims of battery and, even if it does, Barkley contends that the privilege ends as soon as the merchant recovers its merchandise. Both contentions are incorrect.

First, even though *Teel* dealt with a claim of false imprisonment, the merchant's privilege is not limited to such claims. The privilege to detain necessarily includes the privilege to use reasonable force (i.e., a battery), or to threaten the use of such force (i.e.,

12

an assault), to accomplish this detention. As the Supreme Judicial Court of Massachusetts noted, the merchant's privilege would be "meaningless if reasonable force cannot be used. It makes no sense to assume that shoplifters caught in the act will simply comply with a request to wait for the police to arrive." *Commonwealth v. Rogers*, 945 N.E.2d 295, 306 (Mass. 2011).

In addition, Barkley's argument that the merchant's privilege does not protect merchants from claims of battery contradicts the language of section 537.125. The statute explicitly permits the merchant to do several things, including detaining the suspect in a reasonable manner and for a reasonable time, investigating whether the suspect committed a wrongful taking, and contacting law enforcement to initiate criminal proceedings. But the protection for merchants provided by section 537.125 is not limited to the claims most closely associated with those actions, i.e., false imprisonment, slander, or malicious prosecution. Instead, section 537.125 protects the merchant from all liability (civil and criminal) to the person detained.

Barkley's second contention also fails. She argues that the only purpose of the merchant's privilege is to recover stolen property and, therefore, the privilege ends as soon as that purpose is achieved. The only basis for her argument is section 537.125.3, which states that the merchant is permitted to detain the suspect "in a reasonable manner and for a reasonable length of time … in order that recovery of such merchandise may be effected." But Barkley's argument ignores the remainder of the statutory language and the common law breadth of this privilege.

13

*Teel* recognizes that a merchant is allowed to restrain a suspected shoplifter in a reasonable manner and for a reasonable time for three purposes, i.e., "for the purpose of investigation," as well as "for the purpose of obtaining return of the goods or in order to turn her over to the proper authorities[.]" *Teel*, 155 S.W.2d at 79-80. Section 537.125, too, permits reasonable detentions not only for the purpose of recovering the property, as noted in subsection 3, but also for the purpose of "investigating whether there has been a wrongful taking of such merchandise or money." § 537.125.2. The statute expressly authorizes that, once a merchant "has detained such person and investigated such wrongful taking, [it] may contact law enforcement officers and instigate criminal proceedings against such person[.]" § 537.125.4. As a result, not only does section 537.125 not reject the principle from *Teel* that a merchant may detain a suspect in a reasonable manner and for a reasonable time in order to turn her over to the police, it expressly incorporates and reinforces that principle.

Accordingly, the Court holds that the merchant's privilege is not extinguished the instant the merchandise is recovered. Instead, the merchant is privileged to detain the person to determine whether the person actually was committing (or had committed) a wrongful taking and – if so – to detain that person for the purpose of summoning the police and initiating criminal proceedings. As long as the detention is carried out in a reasonable manner and for a reasonable time, the merchant cannot be liable to the person detained under any theory, civil or criminal, including a claim that the merchant used or

14

threatened to use reasonable force to accomplish the detention. Accordingly, Barkley's claim that there is no affirmative defense to her claim of battery is rejected.[5]

Barkley also attempts to argue that Instruction No. 10 is not a proper modification of the MAI 32.10 instruction because the acts it references (i.e., that Barkley "refused to follow defendant's loss prevention officers' instructions or attempted to flee the loss prevention office") are not "unlawful acts" of the type referred to in the directions for using MAI 32.10. This argument is not properly before this Court, however.

Barkley did not claim at trial (or in her new trial motion) that Instruction No. 10 inaccurately stated the elements of the merchant's privilege that Price Chopper pleaded (and the trial court found adequate proof to submit) as an affirmative defense to battery. Instead, she argued that Price Chopper had no affirmative defense to battery. That is why her objection at trial was only that Instruction No. 9 should be given without a "tail" and Instruction No. 10 should not be given at all. In the court of appeals, too, Barkley's Point I did not claim that Instruction No. 10 improperly articulated Price Chopper's affirmative defense. Instead, as at trial, Point I claimed only that Price Chopper had no affirmative defense to her claim of battery and, therefore, the trial court erred by giving Instruction No. 10 and by altering Instruction No. 9 to refer to it.

When this Court granted transfer pursuant to Rule 83.04, Barkley asserted – for the first time in this case – that Instruction No. 10 was not properly drafted and/or that the

---

[5] Other jurisdictions with statutes similar to section 537.125 have found that the privilege includes a right to detain for the police after recovery of the items and an investigation. *See Jacques v. Sears, Roebuck & Co.*, 285 N.E.2d 871, 874, 876 (N.Y. 1972); *Cooke v. J. J. Newberry & Co.*, 232 A.2d 425, 427-28 (N.J. Super. App. Div. 1967).

evidence was insufficient to support the specific factual propositions recited there (rather than arguing that the evidence was insufficient to support any affirmative defense to battery, which is what Barkley argued in the trial court and the court of appeals). To accomplish this, Barkley used her substitute brief to add three new claims to her Point I. Specifically, Barkley added claims that Instruction No. 10: "(1) hypothesized facts not supported by the evidence, (2) included unauthorized deviations from M.A.I. 32.10 by failing to hypothesize unlawful conduct as required in M.A.I. 32.10 paragraph 1, [and] (3) misstated the law in that they purport to authorize the use of force in response to conduct which is not unlawful[.]" Such new claims are not permitted.

Rule 84.13(a) unambiguously provides that "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." In addition, Rule 83.08(b) provides that – if an appellant elects to file a substitute brief after transfer – it "shall not alter the basis of any claim that was raised in the court of appeals brief[.]" Accordingly, Barkley's new arguments are not properly before the Court and will not be addressed. *See Blackstock v. Kohn*, 994 S.W.2d 947, 953 (Mo. banc 1999) (Court may not review challenge to instruction where appellant "did not raise this claim before the court of appeals").

Barkley's new argument, now championed by the dissenting opinion in this Court, did not originate with Barkley in the trial court. It originated with the dissenting opinion in the court of appeals. Absent some constitutional imperative not present here, however, it simply is not the role of the court of appeals or this Court to grant relief on arguments that were not presented to or decided by the trial court. This rule abides regardless of the

16

merits of the new argument.[6]  "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court."  *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 814 (Mo. banc 2011) (quoting *Robbins v. Robbins,* 328 S.W.2d 552, 555 (Mo. 1959).  *See also Brown v. Brown*, 423 S.W.3d 784, 788 (Mo. banc 2014) ("issue that was never presented to or decided by the trial court is not preserved for appellate review"); *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005).  This is why Rule 84.13(a) unambiguously provides that "allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case," and it is why Rule 83.08(b) prohibits appellants from "alter[ing] the basis of any claim that was raised in the court of appeals brief[.]"

## II.    Point Two

Barkley's second point relied on (both in this Court and the court of appeals) states:

> **Point II**:  The Court erred in giving Instruction No. 10, defendant's affirmative defense to battery, because it was not supported by competent and substantial evidence in that Instruction No. 10 hypothesized that all of the batteries inflicted upon plaintiff were inflicted after and as a result of her alleged attempt to flee the loss prevention office when in fact the

---

[6]  Because Barkley did not preserve or properly raise any claim regarding the language of Instruction No. 10, the Court takes no position on whether it was the best way – or even a proper way – to present the merchant's privilege and section 573.125 as an affirmative defense to a claim of battery.  At trial, Price Chopper used MAI 32.13 to present this affirmative defense to Barkley's claim of false imprisonment, and Barkley does not challenge that instruction or the jury's verdict against her in this appeal.  But, perhaps believing that it applied only to claims of false imprisonment, Price Chopper did not use MAI 32.13 as the basis for its affirmative defense to battery in Instruction No. 10.  Instead, it modified MAI 32.10 (resisting invasion of property) in order to present the reasonableness of the force that was used to effect Barkley's detention.

17

evidence showed that numerous batteries were inflicted upon her before the alleged attempt to flee the loss prevention office.

When read through the rubric of Rule 84.04(d)(1)(C), Point II also challenges the trial court's decision to give Instruction No. 10 as an affirmative defense to battery. Here, however, Barkley claims that the legal reason the trial court erred in giving Instruction No. 10 is "because" that instruction was not supported by the evidence. Barkley then explains Instruction No. 10 was not supported by the evidence "in that" it presumes all of the batteries committed by Price Chopper were inflicted after (and, therefore, as a result of) her attempt to flee even though the evidence shows that she suffered other batteries before attempting to flee. Because she insists some of the batteries came before – and, therefore, did not result from – her attempt to flee, Barkley claims that, even if the jury found the facts required by Instruction No. 10, that defense would excuse only some – but not all – of the batteries in Instruction No. 9.

As above, this Court cannot consider Barkley's Point II because it seeks to assert a claim that was never presented to – or ruled on by – the trial court. Barkley raised this same claim in the court of appeals, so – unlike Point I – she did not compound her failure to preserve this claim in the trial court by violating Rule 83.08(b), as well. Nevertheless, under Rule 84.13(a), Barkley's failure to assert her claim in Point II to the trial court precludes any review of that claim here. *See Blackstock*, 994 S.W.2d at 953 (after rejecting one challenge to a jury instruction under Rule 83.08(b) because it was not raised in the court of appeals, this Court rejected another challenge to the same instruction under

18

Rule 84.13(a) because appellant "failed to object on this ground at the instruction conference" at trial).

Barkley's objection to Instruction No. 10 at trial (and in her motion for a new trial) was based on her assertion that the merchant's privilege ended as soon as the store recovered its merchandise and, even if it continued, the privilege did not permit Price Chopper to use any force – even reasonable force – to detain her. Barkley did not argue that there were two (or two sets of) batteries, i.e., those occurring prior to her attempted flight and those occurring after. Nor did she argue that Price Chopper's affirmative defense was sufficient to justify only the latter and not the former. Because Barkley did not present these claims to the trial court, Rule 84.13(a) precludes this Court from considering them now. *See Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 823 (Mo. banc 2000) ("Where an alleged error on appeal relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal."); *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 445 (Mo. banc 1998) (same); *Reid v. St. Louis & S.F. Ry. Co.*, 187 S.W. 15, 18 (Mo. 1916) ("What we hold is that, when counsel stated he had only a certain objection to make, he thereby limited the trial court's examination of the instruction to that one objection, and limits himself to that objection on appeal.").

Barkley responds that she raised a general objection at trial that Instruction No. 10 was "not supported by the evidence" and argues that this should be sufficient to preserve her current claim that the trial court erred in giving Instruction No. 10 because that instruction erroneously implies that all of the batteries occurred after her attempted flight. The Court disagrees. Nothing in the trial transcript or Barkley's motion for a new trial

19

suggests that Barkley made – or that the trial court expressly rejected – the claim that Instruction No. 10 failed to distinguish between those batteries which occurred after she attempted to flee and those which occurred before she attempted to flee. Accordingly, Barkley's second point was not preserved and cannot be reviewed in this Court.

Even if Barkley had preserved this argument, it would fail because the scope of the batteries at issue in this case is determined by Instruction No. 9. The description of the batteries in Instruction No. 9 was written by Barkley – not Price Chopper – and it also fails to draw any distinction between pre-flight and post-flight batteries. Barkley cannot complain that Instruction No. 10 fails to draw a distinction that she failed to draw in Instruction No. 9. *See Outman v. Union News Co.*, 237 S.W. 800, 801 (Mo. 1922) (appellant "cannot complain of defendant's instruction 8, as it is in harmony with her own instruction"); *Lange v. Missouri Pac. Ry. Co.*, 106 S.W. 660, 665 (Mo. 1907) ("party cannot complain of an instruction which is in harmony with one given at his own request").

It was Barkley – not Price Chopper – who decided what batteries to submit to the jury and whether to submit them in one count or two. And it was Barkley – not Price Chopper – who chose to describe the single count of battery in Instruction No. 9 as follows: "[D]efendant intentionally pulled plaintiff's arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her hands were handcuffed behind her back." These acts all occurred after Barkley attempted to flee, not before. Barkley admits – in her court of appeals brief and in her substitute brief – that the only time her hands were handcuffed behind her, the only time she was knocked to the

20

floor, and the only time she was "pulled to a sitting position" on the floor, was after she ran to the door. Barkley cannot parse the record on appeal in hopes of finding a version of the facts that will contravene the giving of Instruction No. 10 because this "Court reviews the record in the light most favorable to submission of the instruction." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010).

Finally, even if Instruction No. 9 encompasses actions that occurred both before and after Barkley attempted to flee, Instruction No. 10 excused any batteries that occurred due to her attempted flight or her failure to follow the employees' commands. One way to effect a detention is to tell the detainee to stay put, and then use force when the detainee refuses to comply. As the dissenting opinion points out, the real question in this trial was whether the Price Chopper employees' commands – and their subsequent force to compel compliance with those commands – were reasonable. But that question is for the jury, not this Court, to resolve. Barkley and Price Chopper argued this question extensively to the jury, and the jury gave its answer. Whatever flaws there may (or may not) be in Instruction No. 10, it effectively focused the jury's attention on this central question, and there is no basis to reject the answer the jury gave.

Accordingly, because Barkley's claim was not preserved in the trial court, and because that claim lacks merit even if it had been preserved, this point is denied.

### III. Points III and IV

Barkley's third and fourth points challenge the admission and exclusion of certain items of evidence. The trial court has broad discretion in admitting or excluding evidence. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). A trial

21

court abuses its discretion only when its ruling is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *In re Care & Treatment of Donaldson*, 214 S.W. 3d 331, 334 (Mo. banc 2007). Even when an evidentiary ruling is in error, this Court will not set aside the jury's verdict unless that error likely changed the outcome of the case. Rule 84.13(b).

First, Barkley argues that the trial court erred in admitting, over her timely and specific objection, letters written by her physician that detail her physical condition in 2007 and 2011. Barkley asked her doctor to write these letters in support of her requests to be excused from jury duty. She claims that they are improper character evidence and are not relevant to any issue in the case. Even if the letters are relevant, Barkley contends they served only to "alienate and foster resentment by the Jurors who were serving" and, therefore, their prejudicial effect outweighed whatever probative value they may have had. Accordingly, Barkley claims the admission of this evidence was reversible error and a new trial is required.

At trial, Barkley argued that the letters and related testimony were "not probative to any issue" and were "highly prejudicial." The trial court ruled that, given the nature of the damages Barkley was seeking, evidence of her physical condition both before and after the incident at Price Chopper was relevant and the letters would be admitted on that basis. Barkley insisted that she already had conceded substantial preexisting health problems and, therefore, there was no need for the 2007 and 2011 letters. The trial court overruled her objections on the ground that Price Chopper was not limited to Barkley's

22

evidence of her prior conditions, and it found that the letters were not unduly prejudicial.[7]

This ruling was not an abuse of discretion.

In personal injury claims, evidence concerning the plaintiff's health and physical condition that tends to prove or disprove the nature or extent of plaintiff's alleged injuries is admissible. *Eickmann v. St. Louis Pub. Serv. Co.*, 323 S.W.2d 802, 806 (Mo. 1959). Accordingly, the letters detailing Barkley's physical condition both two years before and two years after the 2009 incident at Price Chopper were logically relevant. *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002) (evidence is logically relevant if it tends to make any fact of consequence more or less likely than it would be without the evidence). A plaintiff does not get to decide which evidence will (and will not) be used to prove or disprove particular facts, nor is a defendant prohibited from presenting relevant evidence merely because the plaintiff already has done so.

Legal relevance, on the other hand, "weighs the evidence's probative value against unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Johnson v. State*, 406 S.W.3d 892, 902 (Mo. banc 2013) (quotation marks omitted). Here, the probative value of these letters is clear because they detail Barkley's conditions both before and after she allegedly was injured at Price Chopper. And, despite her protestations to the contrary, it does not appear there was any unfair prejudice in admitting them. If the statements in these letters are true, and no one argued

---

[7]  The trial court ordered Price Chopper not to use these letters to challenge Barkley's veracity (e.g., by suggesting Barkley had fabricated or exaggerated her conditions to get out of jury service), and Barkley does not claim that this limitation was violated.

23

they were not, there is no reason to assume that the jury would have held Barkley's requests to be excused from jury duty against her. Even if there is a reasonable likelihood that the jury would misuse this evidence in that way, the proper remedy would be a limiting instruction, not exclusion. Barkley requested no such instruction. Accordingly, the trial court did not abuse its discretion in ruling that the letters (and the physician's testimony concerning them) were admissible. This point is denied.

Finally, Barkley argues that the trial court erred in excluding: (1) personnel records showing that one of Price Chopper's employees had received reprimands for similar conduct both before and after Barkley's incident; and (2) court records showing that a different plaintiff brought a similar claim against Price Chopper in the past. Because Barkley argues that these records were relevant solely to her claim for punitive damages, this claim cannot succeed. Even if this Court assumes for the sake of argument that the trial court erred in excluding these records, that error cannot have been prejudicial to Barkley. The jury never reached the question of punitive damages, or had occasion to consider the evidence relevant to that claim, because the jury found for Price Chopper on both Barkley's battery and false imprisonment claims. Accordingly, any error by the trial court regarding the evidence for or against such damages was harmless. This point is denied.

*Conclusion*

For the reasons set forth above, the trial court's judgment is affirmed.

_____
Paul C. Wilson, Judge

Russell, C.J., Breckenridge and Fischer, JJ., concur;
Stith, J., concurs in part and dissents in part in separate opinion filed;
Draper and Teitelman, JJ., concur in opinion of Stith, J.


DEBORAH BARKLEY,                          )
                                         )
    Appellant,                    )
                                         )
v.                                       )    No. SC94253
                                         )
McKEEVER ENTERPRISES, INC.               )
D/B/A PRICE CHOPPER,                      )
                                         )
    Respondent.                   )

**Opinion Concurring in Part and
Dissenting in Part**

I concur in the principal opinion's holding that section 537.125, RSMo 2000 permits a merchant to detain a suspected shoplifter "in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money," *§ 537.125.2*, and "in order that recovery of such merchandise may be effected," *§ 537.125.3*. Such reasonable detention will not subject the merchant to the risk of suit for unlawful arrest or detention. *Id.* But this does not answer the key questions in this appeal – what is "a reasonable manner" and "a reasonable length of time" for a merchant to detain a person?

Ms. Barkley would have this Court hold that continued detention is per se unreasonable once the store employee reacquires the merchandise from the suspected

shoplifter. She argues, at that point, the "purpose of investigating whether there has been a wrongful taking of such merchandise" has been completed and "recovery of such merchandise" has "been effected." *§§ 537.125.2, .3.*

I agree with the principal opinion that this argument ignores subsection 4 of section 537.125. The latter states in relevant part that a merchant "who has detained such person and investigated such wrongful taking, may contact law enforcement officers and instigate criminal proceedings against such person" without risk of being liable for malicious prosecution or other criminal or civil liability. I agree with the principal opinion that, read together, subsections 2, 3, and 4 permit the merchant to detain the suspected shoplifter after the merchandise has been reacquired if the purpose of the continued detention is further investigation or contacting law enforcement officers and awaiting their arrival for the instigation of criminal proceedings.

I differ from the principal opinion as to what constitutes a "reasonable manner" of detention, however. In particular, the statute, as just quoted, only authorizes use of "reasonable means" of detention for the purpose of investigating the allegedly wrongful taking and while awaiting law enforcement authorities. The principal opinion, by contrast, affirms a verdict based on an instruction that permitted the use of physical force when Ms. Barkley failed to follow the store employees' instructions and when she attempted to flee the store's security office. That instruction did not require the jury to find that such physical force was necessary to recover the merchandise or to detain her at the store while waiting for authorities to arrive. In light of Ms. Barkley's testimony that

2

she simply wanted to go tell her husband where she was and what was going on, and in light of the irrelevance of obedience of employee instructions to any of these statutory issues, this distinction could have been dispositive.

Because of the errors in the submission of these affirmative defenses, I would reverse and remand for a new trial under instructions properly submitting the affirmative defenses authorized by section 537.125.

More specifically, as the principal opinion correctly notes, Ms. Barkley was detained by two security employees at Price Chopper after they saw her fail to pay for some items she had placed in one of the reusable cloth bags she carried with her as she shopped. Although the principal opinion uses the term "concealed" in the cloth bag, thereby suggesting that she put the items in the bag to steal them, the jury acquitted her of shoplifting. In light of that verdict, a more appropriate term would be that the items were "placed" in the cloth bag.[1]

After Ms. Barkley was acquitted of shoplifting, she sued Price Chopper on multiple theories including the theories of false imprisonment and battery. In support of these claims, she testified at the trial that she was diabetic, disabled, and on pain medication, and carried her medications with her when she went with her husband and

---

[1] "Conceal" is defined as, "[t]o keep from being seen, found, observed, or discovered; hide." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 381 (4th ed. 2006). Other definitions include "to prevent disclosure or recognition of," "avoid revelation of," "refrain from revealing," "withhold knowledge of," "draw attention from," "treat so as to be unnoticed," "to place out of sight," "withdraw from being observed," and "shield from vision or notice." WEBSTER'S THIRD NEW INT'L DICTIONARY 469 (1993).

3

granddaughters to buy groceries at Price Chopper. She says she went with one granddaughter to look for diabetes test strips while her husband took the cart and other granddaughters and collected groceries. As she shopped separately with the grandchild, she said, she picked up a few items and put them in the red cloth bag (her husband having the cart) and just forgot about them at checkout.

As shown on a videotape of the 46-minute detention,[2] once Ms. Barkley was brought into the security office, the employees emptied everything out of her purse to examine it (presumably for stolen property) and took her driver's license for identification. For reasons not explained in the record, they looked at her prescription containers and then left them on the counter when they replaced her other items and moved her purse and shopping bags over to the top of a cabinet near where she was sitting. The security employees determined that the value of the items found in the shopping bag was sufficiently high that they called law enforcement. While everyone waited for the police, the employees filled out paperwork, Ms. Barkley took her cell phone out of her pocket to call her husband to let him know where she was and what was going on. One of the employees grabbed her phone from her and put it on the counter, where she could not use or reach it. She testified that she twice asked the employees to contact her husband. They refused and asked her questions for the paperwork. At this point, Ms. Barkley's identity was not in question – the employees had her purse, her cell

---

[2] The videotape has no sound.

4

phone, her prescription medicines, her driver's license, and had mostly filled out the paperwork with information about the incident. After waiting about two minutes, Ms. Barkley got up from the bench and walked over to where the employees were standing by the counter. She says she did so because of concern about her medications still being on the counter rather than back in her purse and to ask again about contacting her husband, but the employees said they did not hear what she said and just saw she had come up to stand next to them. They immediately grabbed her and handcuffed her, she claims while one stated, "I didn't tell you to get up off the f---ing bench" and called her a "druggie" and repeatedly used profanity. She says the employees refused her request that they contact her husband who was sitting outside with the grandchildren.

At this point, as noted by the principal opinion, Ms. Barkley tried to reach the door to the office – she says to let her husband know what was going on - the employees say so she could flee – and she was grabbed, her legs knocked out from under her, and her handcuffs were moved so that her arms were handcuffed behind her rather than in front of her. She was left sitting on her legs on the floor for a long period, before the employees finally helped her up and to walk back to the bench, where she sat down and the employees removed the handcuffs. She remained on the bench until a policewoman arrived.

Ms. Barkley ultimately submitted her case to the jury on the theories of false imprisonment and battery. Ms. Barkley attempted to submit her battery claim without a tail referring the jury to an instruction submitting the store's affirmative defense of

5

reasonable detention. As noted above, I agree with the principal opinion that the trial court properly ruled that section 537.125 does codify a merchant's privilege to detain a suspect for a reasonable time and in a reasonable manner, and that the store was entitled to submit an affirmative defense based on the statute. I disagree, however, that the affirmative defense submitted was the one authorized by the statute.

Ms. Barkley's verdict director submitted that "defendant intentionally pulled plaintiff's arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her arms were handcuffed behind her back." Ms. Barkley's counsel argues on appeal that the first pulling her arms behind her back and handcuffing her occurred when she first got up from the bench, and the knocking her to the floor and pulling her to a sitting position and handcuffing her behind her back occurred after she tried to open the office door, and that the submitted affirmative defenses would not make any of this conduct privileged. I agree.

Section 537.125, gives a merchant a privilege to "detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money" and so that the merchant "may contact law enforcement officers and instigate criminal proceedings."

This is not the affirmative defense submitted by Price Chopper in its affirmative defense instruction, however. Because there is no form M.A.I. for submitting such an affirmative defense, Price Chopper modified M.A.I. 32.10, titled "Battery Actions – Resisting Invasion of Property." M.A.I. 32.10 is as follows:

6

Your verdict must be for defendant if you believe:

First, plaintiff attempted to (*here describe unlawful act such as "enter defendant's home" or "take defendant's property"*) when plaintiff had no right to do so, and

Second, defendant (*here describe defensive measures such as "struck plaintiff"*) for the purpose of resisting plaintiff's attempt, and

Third, defendant used only such force as was reasonable and necessary to prevent plaintiff from (*here repeat act described in Paragraph First*).

This format could not be exactly followed here, because if it were, Price Chopper's instruction would have to submit in paragraph second that it used force to resist the taking of its property and in paragraph third that it used only such force as was necessary to prevent that taking. As Price Chopper already had recovered the property before it used any force, this would not do. So it instead needed to submit why it was authorized to continue to hold Ms. Barkley after it recovered its merchandise, even though it already had her identifying information. That authorization comes from section 537.125, which creates a very specific basis on which a merchant may continue to detain the suspect without risk of suit – the merchant must have reasonable grounds to believe there has been a wrongful taking and the continued detention must be for the purpose of investigating whether there had been a wrongful taking or to wait for the arrival of law enforcement.

To apply section 537.125 correctly, therefore, MAI 32.10 had to be modified so that it instructed the jury that it should find for defendant if it found that defendant had reasonable grounds to believe there was a wrongful taking and that it continued to detain

7

plaintiff for a reasonable time and in a reasonable manner in order to investigate whether there had been a wrongful taking or to await law enforcement. In other words, unlike in the example given in MAI 32.10, it is not the allegedly wrongful taking that justified the use of force; rather, it is the desire to continue investigating and await law enforcement.

One way MAI 32.10 could have been modified to accomplish this purpose that would have been in accordance with section 537.125 would have been to add an additional paragraph, so that the instruction would read something like the following:

Your verdict must be for defendant if you believe:

First, plaintiff attempted to take defendant's property when plaintiff had no right to do so, and

Second, defendant intentionally pulled plaintiff's arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her arms were handcuffed behind her back, and

Third, defendant did so for the purpose of investigating whether there had been a wrongful taking of its property or to detain plaintiff until law enforcement officers arrived, and

Fourth, defendant used only such force as was reasonable and necessary to investigate whether there had been a wrongful taking of its property or to detain plaintiff until law enforcement arrived.

Instead, Price Chopper modified MAI 32.10 so it instructed that the jury should find for defendant if it found that plaintiff did not follow its employee's instructions and attempted to flee its security office, stating:

"First, plaintiff Deborah Barkley either refused to follow defendant's loss prevention officers' instructions or attempted to flee the loss prevention office, and

8

Second, defendant's loss prevention officers handcuffed and leg swept plaintiff for the purpose of resisting plaintiff's attempt to flee the loss prevention office, and

Third, defendant's loss prevention officers used only such force as was reasonable and necessary to prevent plaintiff from fleeing the loss prevention office."

Defendant's instruction was erroneous. It told the jury that Ms. Barkley's wrongful conduct was not the taking of property from Price Chopper without paying for it but failing to follow defendant's loss prevention officers' instructions and attempting to flee the loss prevention office. It told the jury that if the officers handcuffed and leg swept her to keep her from fleeing that office or because she failed to follow instructions, then the jury had to find for defendant. It nowhere explained how the failure to follow instructions was relevant to its defense but simply posited that it was wrongful and somehow connected.

These submissions are not authorized by section 537.125. Refusing to follow defendant's employees' instructions is not the same as refusing to await law enforcement. Trying to leave a security office is not the same as refusing to await the arrival of law enforcement. And neither of these two acts is the unlawful act that justified the detention – that unlawful act, the one that should have been submitted, was the taking of items without paying for them, and the jury should have been required to find that this wrongful taking occurred before it could consider the alleged privilege.

This distinction is key to liability, for section 537.125's defenses only apply for the purpose of reacquiring the merchandise and investigating and holding the person for

9

law enforcement. Those means may not be used merely to make a person follow employee instructions or not leave the security office. And as the employees already knew who Ms. Barkley was and had her purse, ID, and medications, she was not fleeing to avoid identification. Had the jury been properly instructed that force was reasonable only if used to investigate or to hold her for law enforcement, it might well have found that the force was not used in a reasonable manner when it was used because she failed to follow instructions and tried to leave the office to talk with her husband.

The principal opinion says that even if the instruction were incorrect in submitting these defenses, it is simply a matter of incorrect wording and Ms. Barkley did not object to the wording of the instruction. But, the problem with the instruction is not the particular words used but the very concept that failing to follow instructions or leaving the security office are submissible as affirmative defenses at all. Counsel for Ms. Barkley did adequately make this objection at the instruction conference, stating:

> [Ms. Barkley's counsel]: We object to the giving of Instruction 9 in its present form with the tail referring to the affirmative defense submitted by defendant because that defense submits inapplicable and inappropriate defenses to plaintiff's battery claim. It misstates the law with respect to plaintiff's battery claim and the law with respect to defenses to battery. Further, we object because it is not supported by the evidence and misleads the jury as to the law and the evidence.
> ….
> [The Court]: Moving on to instruction No. 10 submitted by the defendant, is there an objection to this instruction?
> [Ms. Barkley's Counsel]: Yes, Judge, I object to it for the same reasons that I stated with respect to Instruction 9.
> …. [Ms. Barkley arguing distinction of case cited by counsel for defendant] … and the facts in this case don't warrant or justify the submission of this instruction in this case.

10

While the principal opinion is correct that this objection certainly is not a model, it specifically raises the issue that defendant's affirmative defense instruction "misstates the law with respect to plaintiff's battery claim and the law with respect to defenses to battery." This was minimally adequate under Rule 84.13 to preserve counsel's point on appeal that the affirmative defense instruction did not submit an authorized defense and is not authorized by section 537.125. The objection further was adequate to preserve Ms. Barkley's additional objection that Instruction 10 submitted facts that were not supported by the evidence – specifically that the instruction submitted that Ms. Barkley was handcuffed to prevent her from fleeing whereas she notes it is undisputed that only the second handcuffing allegedly was for that purpose and that the first was because she "failed to follow instructions" of Price Chopper's security officers.[3] Counsel was not required to tell the court how Price Chopper could improve the instruction by removing the reference to employee instructions and making the flight defense apply only to the second battery and modifying it to clarify that Ms. Barkley's intent had to be to flee before police arrived, not just to leave the security office.

Finally, Ms. Barkley's Point II in the court of appeals did directly and specifically raise the impropriety of submitting "fleeing the loss prevention office" as an excuse for

---

[3] Contrary to the principal opinion's statement, instructions 9 and 10 clearly submit both batteries, which is why there are two references to handcuffing plaintiff rather than just a single reference.

11

the batteries that occurred prior to her attempt to open the door to the security office.[4]

This was adequate to preserve that issue under any application of Rule 83.08.

For these reasons, I would remand for a new trial at which both parties should more carefully follow the statute in preparing the jury instructions.

_____
**LAURA DENVIR STITH, JUDGE**

---

[4] Point II said that Instruction 10 was improper because:

> it was not supported by competent and substantial evidence in that Instruction No. 10 hypothesized that all of the batteries inflicted upon plaintiff were inflicted after and as a result of her alleged attempt to flee the loss prevention office when in fact the evidence showed that numerous batteries were inflicted upon her before the alleged attempt to flee the loss prevention office.

12